Breitel, J,
(dissenting). It is significant that the court does not hold that weighted voting schemes are per se unconstitutional, or even that the particular plans sub judice deviate so much from the constitutional ideal of one man-one vote as to be rendered invalid. Rather, the holding assumes that the plans *255 are of doubtful validity although the Supremo Court of the United States has abstained deliberately from mandating the one man-one vote doctrine on local legislative bodies and that, in the present cases, the defendant counties have not satisfied the burden of demonstrating or producing evidence that the plans are constitutional.
On these premises, there is no disagreement that there is insufficient evidence before the court to conclude that the present plans are unconstitutional. As the court recognizes, therefore, petitioners have not come forward with evidence, mathematical or otherwise, sufficient to justify a holding that these plans offend constitutional norms. Instead, the burden of proof is shifted to the proponents of constitutionality on the ground that weighted voting plans are of ‘ ‘ doubtful constitutional validity”, an unusual and extraordinary procedure (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150; see, also, Fortson v. Dorsey, 379 U. S. 433, 439, applying the rule to reapportionment; but see Swann v. Adams, 263 F. Supp. 225, 226 [S. D., Fla.], holding that a State had the burden to justify population variations and also holding without discussion that an undescribed weighted voting plan for a State legislature was impractical and.of doubtful validity).
The Supreme Court of the United States has recently recognized that the one man-one vote doctrine should not be applied with the same precision to local elective bodies as to State legislatures (Sailors v. Board of Educ., 387 U. S. 105; Dusch v. Davis, 387 U. S. 112). This would appear to be a recognition that mathematical precision in this area may involve a correlative sacrifice of socially and politically desirable values. Consequently, it cannot be said that weighted voting plans are generically invalid, or that there is or should be any presumption to that effect.
Most suggested alternatives to a weighted voting plan (of some formula), and especially those suggested in these cases, are undesirable: either local bodies are to be composed of numerous members, with a commensurate loss of deliberative capability, or the political voices of small but discrete and geographically compact groups are to be overwhelmed by combining *256 the votes of their members with those of larger groups in a single district.
Thus, a weighted voting scheme, qua weighted voting scheme, cannot be condemned as of “ doubtful constitutional validity ’ ’. Such a plan may be as viable politically and socially as any other alternative. To be sure, the one man-one vote doctrine may not be ignored simply because local subdivisions, rather than the State itself, are involved (see Seaman v. Fedourich, 16 N Y 2d 94). If a weighted voting plan is shown to discriminate unduly in favor of or against electors in one district or another it should be struck down as unconstitutional. But the burden of demonstrating, and of coming forward with evidence in the first instance, that a particular plan is repugnant to the Constitution should remain on those who make the claim.
Turning to the particular problems in the present cases, it requires no refined analysis or computer assistance to understand that a weighted voting plan, by giving a few representatives more votes than their colleagues in a legislative body, gives them votes that are proportionately more effective, simply because their multiple votes cast as inseparable aggregates must, therefore, be more influential. In fact, it is not too difficult to understand that such a system gives the representatives from the larger districts more effective voting power than would be warranted under a strictly mathematical and therefore mechanical adherence to the one man-one vote ideal. Consequently, the electors whom they represent are thereby given, theoretically, a greater control through their representatives than would otherwise be the situation. On the other hand it is equally obvious that to atomize sectors of these populations into numerous districts reduces the effectiveness of the local legislative body and the deliberative participation by its members. If single-member districts, without weighted voting, are to be mandated, and if legislative bodies of reasonable size are to be retained, it will often be necessary to deprive territorially concentrated and discrete groups of their own representation by combining their votes with those of larger demographic units.
Given these difficulties the solution should not be governed by rigid constitutional limitations in assessing a weighted voting plan. Bather the solution should be left to local experi *257 mentation and practical compromises within reasonable limits or, better, to determination by the State Legislature, itself reasonably apportioned under constitutional plans. True, there may be some instances where the amount and kind of weighting in a weighted voting plan or, for that matter, a multiple district plan, would exceed constitutionally tolerable standards. If a multiple district plan proposed a local legislative body of an unwieldy number of representatives its members would be deprived of the effective power to act, let alone deliberate. On the other hand, if a weighted voting plan were to give a city or a single populous town in a county virtual power to enact or veto legislation through one representative then that, too, would be patently defective. But plans that do not approach dangerously close to these extremes should be permitted, at least by way of experimentation.
Moreover, plans have been formulated whereby votes of the members of the legislative body are so weighted as to compensate for the disproportionately great power alleged to be given to the representatives of populous districts. A study of this nature was undertaken and found feasible by the Supreme Court of Wayne County in rejecting an unadjusted weighted voting plan in Dobish v. State of New York (53 Misc 2d 732 [Livingston, J.]). See, also, Town of Greenburgh v. Board of Supervisors of Westchester County (53 Misc 2d 88, 97-99 [Nolan, J.]), suggesting a “modified” weighted voting plan, whereby weighted voting and multiple-member district systems are combined to produce a mathematically equitable result, but rejecting the plan before it since it was predicated upon numbers of registered voters instead of population in the districts.
Such a system might be the best solution to the dilemma with which the court is faced, making it necessary to choose between undesirable alternatives. Unfortunately, however, the papers before the court do not demonstrate that such a system is mathematically feasible in this case. But in the absence of any greater knowledge, it cannot be said that the legislative determination in favor of weighted voting under the formulas sub judice, in preference to equally or more undesirable alternatives, is presumptively unconstitutional, in the absence of a clear demonstration that the disproportion created by the *258 present formula is undue (see Furlson v. Dorsey, 370 U. S. 433, 439, supra).
Lastly, as for Mr. Banzhaf’s helpful analysis, he modestly limits its value to the mathematical consequences and mathematical evaluations of weighted voting systems. He says, in his amicus brief, quite candidly, that his mathematical models do not purport to present a realistic picture of the actual operation of such systems 11 which of course would involve factors such as party politics and urban-rural interests which are not considered by these simple models ”. And that is what cases of this kind are about.
Accordingly, I dissent and vote to reverse.
Judges Scilippi, Bergan and Keating concur with Chief Judge Fuld; Judge Breitel dissents and votes to reverse in an opinion in which Judges Van Voorhis and Burice concur.
In each case: Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.