Gerald Nolan, J.
This action is one of many which have been prompted by recent decisions of the Supreme Court of the United States which have pronounced the rule that the equal protection clause of the Fourteenth Amendment requires that seats in our State Legislatures be apportioned on a population basis, under the principle of “ one person, one vote ” (see Gray v. Sanders, 372 U. S. 368). We have been told by the Supreme Court that legislators represent people, not trees or acres, and are elected by voters, not farms or cities or economic interests; that the right of suffrage is a fundamental matter in a free and democratic society; that each and every citizen has an inalienable right to full and effective participation in the political processes of his State’s legislative bodies; and that the Constitution demands that each citizen have an equally effective vote in the election of members of his State *118 . Legislature. -Consequently, it has been stated, an individual’s right to vote for State legislators is unconstitutionally impaired when its weight is in -a substantial fashion diluted when compared with the votes of citizens living in other parts of the State (Reynolds v. Sims, 377 U. S. 533),
In this action the plaintiffs do not challenge the apportionment of seats in the State Legislature. They seek a declaration that certain provisions of the Westchester County Charter, the Westchester County Administrative -Code, and of the Charters of the Cities of Yonkers, New Rochelle, Mount Vernon, 'White Plains, Peekskill and Rye which establish the membership of the Board of Supervisors of Westchester County are unconstitutional under our own -Constitution and the equal protection clause of the Fourteenth Amendment. Nevertheless, we have been informed by our own 'Court of Appeals that there can be little doubt that that principle (“ one person, one vote ”) is applicable to elective legislative bodies exercising general governmental powers at the municipal level (Seaman v. Fedourich, 16 N Y 2d 94) and the principle has been applied in other cases in this State involving apportionment of seats in County Boards of Supervisors (cf. Matter of Goldstein v. Rockefeller, 45 Misc 2d 778; Shilbury v. Board of Supervisors, Sullivan County, 46 Misc 2d 837; Augostini v. Lasky, 46 Misc 2d 1058). It must also be applied here. Plaintiffs have moved for summary judgment pursuant to CPLR 3212 and it must be conceded that the problem presented is considerably more complicated than those which were involved in the cases above cited. Westchester County contains 6 cities and 18 towns. The total population of the county is 853,198. Neither the town nor the city lines were drawn on a population basis and there is a substantial disparity between the populations -of the 24 towns and cities which constitute the county. For instance, according to the United States Census of 1960, on which the plaintiffs rely in presenting population data to the court, the population of the Town of Greenburgh is 76,213, and that of North Salem is 2,345, Yet each has -one supervisor, as provided by section 20 of the Town Law. The 1965 Special Census figures which the defendants contend should be accepted as the basis for our conclusions, give the respective figures as 82,882 and 2,924. Peekskill, although it has only 18,-504 inhabitants (1965 census) has 2 supervisors, and New Rochelle and Mount Vernon, which have smaller populations than Greenburgh, have 4 and 5 supervisors respectively. White Plains, with a population of 50,000, has 3 supervisors, and Yonkers, with a population of 201,573, has 12 supervisors, although its population ratio to that of Greenburgh is about *119 2% to 1, and to that of the Town of North Salem, which has 1 supervisor, is about 66 to 1. Whether the 1960 or the 1965 census figures are used, it is apparent that a majority of the board can be elected by the voters in towns and cities which have less than 40% of the population of the county, and that legislation can be enacted or defeated by the supervisors so elected. It is also apparent that the voters in towns and cities having more than a majority of the total population are represented by only 33%% of the total number of members of the board. These figures, however, indicate only the difficulty that will be encountered in attempting to apply the “ one person, one vote ” rule to the apportionment of seats, or voting power among the members of the Board of Supervisors. Even a casual examination of the figures is sufficient to demonstrate, in view of the fact that each supervisor has one vote, that the disparities in population as between the various municipalities involved are so great that it is impossible to reconcile present apportionment or districting with constitutional requirements of population based representation.
The defendants have urged that there are issues of fact which require a trial. Various allegations of the complaint have been denied, but an examination of the pleadings in the light of the affidavits and briefs submitted in opposition to the motion discloses that there is no dispute as to the material facts. It is urged by the County Attorney and the court agrees that in solving the problem presented it is neither practicable nor desirable to establish rigid mathematical standards and that the proper judicial approach is to ascertain whether under the particular circumstances existing there has been a faithful adherence to a plan of population based representation with such minor deviations as may occur in recognizing certain factors that are free from taint of arbitrariness or discrimination. So the Supreme Court has stated (Roman v. Sincock, 377 U. S. 695, 710). The same court has also clearly indicated, however, that if population should be submerged as the controlling consideration in the apportionment of seats in a legislative body the rights of all citizens to cast an effective and adequately weighted vote would be unconstitutionally impaired (Reynolds v. Sims, 377 U. S. 533, 581, supra).
It is also urged that there are existing political remedies which the plaintiffs may invoke and which will give them adequate relief. It is suggested that the plaintiff supervisor may at any time introduce an appropriate local law providing for the apportionment of the voting strength of the board among its members in a manner which will meet constitutional requirements, or that
*120 the citizens of the Town of Greenbnrgh may incorporate as a city, or request appropriate action from the State Legislature. Reference is also made to the remedy provided by section 5 of the County Charter (L. 1937, ch. 617, as amd.). It may be conceded that these remedies are available and have not been resorted to and that the existence of such remedies was considered sufficient to preclude Federal judicial intervention in Bianchi v. Griffing (238 F. Supp. 997). A similar argument was rejected, however, in Lucas v. Colorado Gen. Ass. (377 U. S. 713, 736) in which the Supreme Court said: “ Except as an interim remedial procedure, justify a court in staying its hand temporarily, we find no significance in the fact that a nonjudicial, political remedy may be available for the effectuation of asserted rights to equal representation.” It follows that the defense asserted is insufficient. Neither, does the fact that the Committee on Legislation of the Board of Supervisors has submitted to the board a proposed local law, and that a public hearing has been held thereon, nor the fact that the committee has under consideration another proposed local law intended to remedy the conditions complained of, furnish any defense to the defendants. Neither of these local laws has been approved by the board, nor is there any certainty that either will be. Neither may plaintiffs be denied relief because it has not been established that legislation has in fact been enacted or defeated by supervisors representing a minority of the population of the county or because plaintiffs have conceded for the purposes of this motion that the minority representatives have not so acted. The short answer to that argument is that if we are to apply the “ one person, one vote ” principle in this case, as we must, the plaintiffs have established their grievance when they have shown that the weight of their votes has been substantially diluted when compared with the votes of those living in other municipalities in the county (cf. Reynolds v. Sims, 377 U. S. 533, 568, supra).
The plaintiffs are, accordingly, entitled to judgment declaring that the present apportionment of the voting power of the membership of the defendant Board of Supervisors of Westchester County is unconstitutional in that it violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and section 11 of article I of the Constitution of the State of New York.
Plaintiffs’ application for a further declaration that the City Charters of the Cities of Mount Vernon, New Rochelle, Peeks-kill, Rye, White Plains and Yonkers are unconstitutional insofar as they require the election of the number of supervisors specified therein, from each city, without regard to popula *121 tion, is denied. Unquestionably each of the City Charters provides for the election of an arbitrary number of supervisors. As has been stated, Yonkers, with a population of 201,573, has 12. New Rochelle, with a population of 75,206, has 4. Mount Vernon has 5, with a population of 72,918. White Plains, with a population of 50,040, has 3, and Peekskill with a population of 18,504, has 2. Rye has a population of 15,232, and has 1 supervisor. In each case the City Charter requires the election of the number of supervisors specified. Concededly, also, each supervisor elected in the cities becomes automatically a member of the County Board of Supervisors. However, they are not elected as such. They are city officers (Election Law, § 191, subd. 1, par. [c]), and become members of the County Board, perform their duties and exercise their voting power as supervisors under other general and other special or local laws (cf. Lane v. Johnson, 283 N. Y. 244; People ex rel. Platt v. Eilert, 283 N. Y. 770; People ex rel. Clancy v. Supervisors, 139 N. Y. 524). None of the City Charters is per se unconstitutional insofar as it provides for the election of an arbitrary number of city officers, nor is the Town Law invalid insofar as it provides that each town in Westchester County shall have a supervisor. Inequality in representation in the board, as between the cities and the towns, arises from the operation of other statutes. Section 150 of the County Law provides that the supervisors of the several cities and towns in each county, when lawfully convened, shall constitute the Board of Supervisors of the county, and section 153 of the same statute provides for action by the board by a majority of its membership. Neither of these statutes is attacked by plaintiffs as unconstitutional. Similar provisions are contained, however, in the Westchester County Charter (L. 1937, ch. 617, §§ 5, 11, 12, as amd.) and in the Westchester County Administrative Code (L. 1948, ch. 852, §§ 12, 34, subd. [a], as amd.). The charter provisions and those of the Administrative Code above referred to, insofar as they require or authorize the continuance of the Westchester County Board of Supervisors as presently constituted and as its voting power is presently apportioned, are unconstitutional, as denying equal protection of the laws, in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and section 11 of article I of our State Constitution, and plaintiffs may have judgment accordingly.
Other demands for relief are denied at this time. Plaintiffs have asked that the court permit the Board of Supervisors to continue as presently constituted only for such a period of time as shall appear to be equitable, with provisions for interim *122 relief which will establish a reasonable relationship between representation and population; to direct the board to effectively reorganize its representation and voting power in accordance with a schedule to be provided by the court, and to fix a date beyond which the board may not act if it has not effectuated a valid and constitutional system of population based representation. The granting of such relief does not appear to be necessary or advisable at this time, at least. It must be conceded that a denial of constitutional rights demands judicial protection. However, legislative apportionment is primarily a matter for legislative consideration and determination, and judicial relief becomes appropriate only when a legislative body fails to reapportion according to constitutional requisites in a timely fashion after having had an adequate opportunity to do so (cf. Reynolds v. Sims, 377 U. S. 533, 586, supra). It is true that for several years past the plaintiff supervisor has demanded without result that the board take appropriate action to give the plaintiff town adequate representation in the board. However, no definite scheme of reapportionment has at any time been proposed to the board by the plaintiffs or any of them and it has been conceded, at least for the purposes of this motion, that despite population disparities, the representatives of the population minority have not, in the past enacted or defeated legislation brought before the board for action. Neither has any court heretofore held that the present scheme of apportionment is unconstitutional. Legislators charged with the duty of reapportioning voting power in local legislative bodies, according to recently announced constitutional standards, are required to act in a new and developing area of the law in which the rules which are to be applied are by no means well defined. The board has before it for consideration at least two tentative local laws which are designed to provide for valid population based representation, and it is quite possible that the Legislature of the State will devise means to facilitate reapportionment of local legislative bodies at its 1966 session. Under all the circumstances, it is considered advisable to defer further judicial action for the present at least so that the board, and the State Legislature, may have an opportunity to take such action as may be necessary to provide constitutional reapportionment or districting. Neither will the court consider, at this time, or advise as to the constitutionality of the two tentative local laws which the legislative committee of the board now has under consideration. As has been stated, neither of these laws has been adopted or approved by the board, nor is there any indication at present that either will be. In wj event, other remedies exist which *123 the hoard may prefer, including the creation of a County Board similar to that provided by section 5 of the charter. These are matters for consideration by the Board of Supervisors, and they should have an opportunity for such consideration without judicial supervision or intervention for the present at least. It is not for the court, at least in the first instance, to prescribe the type of representative government which is best suited for the needs of Westchester County. That is a legislative problem. The function of the courts, ordinarily, is to determine whether particular legislative enactments transgress constitutional requirements. Whether further judicial action will be required in this case may be better determined after the legislative authorities have had an adequate opportunity to act.
The court will retain jurisdiction of this action for all purposes with the right given to any party to seek further relief, at the foot of the judgment to be entered, at any time after May 1,1966, or prior to that date if action shall be taken by the defendant board to adopt a plan of reapportionment consistent with constitutional standards.