Marshall E. Livingston, J.
On May 10, 1967, this court in a prior proceeding held that the apportionment of the Wayne County Board of Supervisors was unconstitutional and disapproved a proposed weighted voting plan then submitted (see Dobish v. State of New York, 53 Misc 2d 732).
Subsequently, on July 12,1967, in Iannucci v. Board of Supervisors of County of Washington (20 N Y 2d 244) and Saratogian, Inc. v. Board of Supervisors of County of Saratoga (20 N Y 2d 244), the Court of Appeals considered an ‘1 adjusted weighted voting plan ” and a “ fractional-weighted voting plan ”, both of which failed to be approved as submitted. The count held (pp. 252-253): “ [I]t is not readily apparent on its face whether either of the plans before us meets the constitutional standard. * * * In order to measure the mathematical voting power of each member of these county boards of supervisors and compare it with the proportion of the population which he represents, it would be necessary to have the opinions of experts based on computer analyses. * * * In our view, it was incumbent upon the boards to come forward with the requisite proof that the plans were not defective.”
With reference to the ¡standard for measuring a legislator’s voting power, that is, his “ ability * * * by his vote, to affect the passage or defeat of a measure ” (Iannucci v. Board of Supervisors of County of Washington, supra, p. 251; Saratogian, Inc. v. Board of Supervisors of County of Saratoga, supra), the court said (p. 252): “ Ideally, in any weighted voting plan, it ¡should be mathematically possible for every member of the legislative body to cast the decisive vote on legislation in the same ratio which the population of his constituency bears to the total population. Only then would a member representing 5% of the population have, at least in theory, the same voting *369 power (5%) under a weighted voting plan as he would have in a legislative body which did not use weighted voting-e.g., as a member of a 20-member body with each member entitled to cast a single vote. This is what is meant by the one man-one vote principle as applied to weighted voting plans for municipal governments. A legislator’s voting power, measured by the mathematical possibility of his casting a decisive vote, must approximate the power he would have in a legislative body which did not employ weighted voting.” (Emphasis supplied.)
Therefore, on July 31, 1967, a hearing was held, and expert testimony was given by Lee Papayanopoulos, A.B., M.S., an I.B.M. Systems Engineer and mathematics and special research specialist. Mr. Papayanopoulos was thoroughly familiar with the Banzhaf article (19 Butgers L. Bev. 317 [1965]), and the premises expressed therein. He has done extensive research with the digital computer in apportionment problems generally. He pointed out that it is possible to solve the problem of determining the number of “ critical combinations ” (i.e., the number of times when the “ yes ” or “ no ” votes of a legislator having a certain number of votes will pass or defeat a measure) by a mathematical formula with which he is familiar, but that to solve this problem “ by hand ”, so to speak, would take many, many hours of work. He testified that such a problem ¡set up and programmed in a digital computer can be solved in 10 or 15 minutes, depending on the number of units (e.g., towns) involved. In substance, he .said, digital computers are an accepted method of solving complicated problems involving reasonable probability and analyses, such as confront us in this case.
In my judgment, after listening to this witness for an extended period, both on direct- and cross-examination, the conclusion was apparent to me that his extensive and comprehensive knowledge of this subject formed the basis for his expert opinion that either of the computer analyses he presented (Exhibits 3 and 4 hereinafter set forth) fairly represent adjusted weighted voting plans wherein it is “mathematically possible for every member of the legislative body to cast the decisive vote on legislation in the same ratio which the population of his constituency bears to the total population ” of the county (Iannucci v. Board of Supervisors of County of Washington, 20 N Y 2d 244, 252, supra; Saratogian, Inc. v. Board of Supervisors of County of Saratoga, 20 N Y 2d 244, supra).
Exhibits 3 and 4 are set forth below.

*370

*371 Mr. Papayanopoulos testified that he developed four plans, but that Exhibits 3 and 4 most nearly approximate the voting power of an individual legislator in its ratio to the percentage of population such legislator represents.
Column H, therefore, as interpolated on the exhibits, Mr. Papayanopoulos testified, is meaningful when Column F (voting power) is divided by Column G- (percentage of population). Column. H then shows the ratio of the effective vote or voting power (Column F) to the actual percentage of population (Column G), represented by each Supervisor. It portrays the effectiveness in relation to 100% which each Supervisor can assert when called on to vote at any time, without regard to how persuasive or politic he may be.
It is noted that by adjusting the weighted vote of Arcadia, Sodus and Rose, the disparity of effective voting power and the actual percentage of population between towns, as shown by Column H, would be a maximum of 4.53% (Palmyra, 101.80; Marion, 97.27) under the plan represented in Exhibit 3, and 2.72% (Walcott, 100.83; Butler, 98.11) under the plan represented by Exhibit 4.
Under Plan-Exhibit 3, the voting power of Palmyra is over-weighted 1.8% (101.80) and that of Marion is underweighted 2.73% (97.27).
Mr. Papayanopoulos testified that Plan-Exhibit 4 does not exactly double the weighted votes of each town, although it approximates such a situation. He stated that by doubling or multiplying the number of votes by increasing integers, that factor of disparity between the voting power and the percentage of population grows smaller, but, as he pointed out, the number of critical combinations when a decisive vote can be cast does not change significantly. It does, however, render the tally of a vote rather complicated.
The discrepancies in voting power are not meaningful and do not affect my conclusion that each Supervisor under either plan may cast a decisive vote in substantially the same ratio which the population of his town bears to the total county population. Therefore, either of these plans satisfies the “ one person, one vote ” principle and is constitutional in my opinion.
We now come to the implementation of this decision so that the Wayne County Board of Supervisors can take the necessary action to effectively reorganize the voting power of each Supervisor.
There is no prohibition in the New York State Constitution against a county Board of Supervisors changing the voting power of an elective county officer. The New York Constitution *372 (art. IX, § 1, subd. [h], par. [2]) only provides for a permissive referendum when such change is made after the adoption by the county of an alternative form of government (e.g., Municipal Home Rule Law [art. 4, part 1]). Wayne County has not adopted such a form of county charter.
Under the Municipal Home Rule Law (§ 10, subd. 1, par. [ii], subpar. a, cl. [1]), however, a county has authority to legislate concerning the powers of its officers. Therefore, the Board of Supervisors has the power to enact a local law providing for a constitutional adjusted weighted voting plan in accordance with one of those considered here.
The present apportionment of the Wayne County Board of Supervisors is unconstitutional. Therefore, the constitutional necessity to provide equal protection of the laws for the people of Wayne County furnishes, in my opinion, ample foundation for the adoption of a local law, pursuant to article .2 (§ 10) of the Municipal Home Rule Law.
Section 153 of the County Law provides for the rules of procedure of the Board of Supervisors and states that the power of the board ¡shall he exercised through local laws or resolutions duly adopted by it. Subdivision 4 of such section, albeit negatively, likewise provides for a ‘ ‘ proportion of the voting-strength ’ ’. It is singular to note that although this section was from the County Law of 1909 (ch. 16, §§ 10 and 17), it nevertheless appears to be broad enough to authorize an adjusted weighted voting plan nearly 60 years later.
The Wayne County Board of Supervisors shall promptly enact a local law in conformity with this opinion, and no referendum, permissive or mandatory, is required in this situation.
The effective date shall in no event be later than January 1, 1968.