John J. Dillon, J.
This declaratory judgment action, involving the reapportionment of the Board of Supervisors of Westchester County, has been before the court so often and has occa *1009 sioned so many opinions (see 49 Misc 2d 116; 51 Misc 2d 168; 53 Misc 2d 88; 55 Misc 2d 1031; and the unreported opinions of August 23, 1967, and May 21, 1968, the latter affirmed in 30 A D 2d 708), that no further statement of its background is deemed necessary. The present posture of the case is that the court has upheld the constitutionality of a plan of apportionment under which the legislative body of the county would consist of 35 members, 5 of whom would be elected at large from each of the 7 Assembly Districts within the county. The Board of Supervisors now asks for approval, from a constitutional standpoint, of an alternative plan based on weighted voting.
Under the plan now proposed, the legislative body of the county is to be known as the “ County Board.” It will have 48 members, consisting of the present 45 Town and City Supervisors, plus 2 additional representatives from the Town of Greenburgh and 1 additional representative from the Town of Bye. The voting power is weighted in the proportion of 1 vote to approximately 1,000 of population, so that the 48 representatives will cast a total of 857 votes. This plan was adopted by the Board of Supervisors on August 19, 1968, and is identified as Local Law No. 8 of 1968.
The court is called upon to determine whether the plan meets the constitutional standards laid down by the United States Supreme Court in such cases as Reynolds v. Sims (377 U. S. 533). Several weighted voting plans have heretofore been presented with varying results. Without adverting again to earlier plans, it seems sufficient to say that the court upheld the validity of one weighted voting plan in its decision of August 23, 1967, but that the plan was rejected by the voters at the referendum held in November, 1967. Another such plan was held invalid in the decision of May 21, 1968, with which the Appellate Division agreed (30 A D 2d 708). The principle underlying these decisions is that weighted voting is not invalid per se, and that a specific weighted voting scheme may or may not be constitutional depending on how closely it approximates the ideal of giving each voter equality of representation (cf. Iannucci v. Board of Supervisors of County of Washington, 20 N Y 2d 244).
In devising the present plan the board’s method of approach has been the same as in earlier plans. In previous decisions in this case, including the decision of Mr. Justice Nolan reported in 53 Misc 2d 88, that method has received approval, although the results have not always been held satisfactory. The board has again undertaken to determine, not merely the relationship between the vote of each representative and the size of his *1010 constituency, but likewise his effective voting power — that is, the mathematical possibility that his vote may actually influence legislation, at least in proportion to the number of people he represents. This can be done readily by computerized calculations.
The question in each case is how close the plan comes to that exactness which no method of apportionment can ever hope to reach. It has been said in one of the earlier decisions in this case that ‘ ‘ mathematical precision, of course, can never be attained, nor is it a practical test of apportionment ” (51 Mise 2d 168, 176). Viewed in that manner, it is apparent that the present plan is less precise than the plan which received court approval on August 23, 1967, but substantially superior to that which was disapproved on May 21,1968.
The Town of Greenburgh may be taken as an example. Under the weighted voting plan offered in 1967, Greenburgh was to have four legislators each casting 21 votes, comprising 84 votes out of a total of 859. Each of these four legislators, representing 2.429% of the county population, was to have 2.445% of the vote on the board and mathematically could have cast a decisive vote in 2.453% of all possible voting combinations. This was held to be a satisfactory compliance with the 1 ‘ one man — one vote ” principle. Under the plan disapproved on May 21, 1968, Greenburgh was to have only one representative with 79 votes out of a total of 852 — a marked departure from the rule of one vote per thousand persons, and an arrangement which would nevertheless have permitted Greenburgh’s one representative, with only 9.272% of the vote on the board to influence legislation in 10.302% of all hypothetical cases. The court held that this was too great a discrepancy to warrant approval. Under the present plan Greenburgh is to have three representatives, each with 28 votes, making a total of 84 votes out of a total of 859. Exhibit “ B ” annexed to the motion papers indicates that each of these three members of the board, representing 3.238% of the population, has 3.267 % of the total vote and will be able to cast a decisive vote in 3.285% of all cases. When the powers of the four Greenburgh members under the 1967 plan and of the three Greenburgh members under the present plan, are added together, it appears that the present plan is less exact than that offered in 1967, but significantly better than the plan last offered. Under the new plan the three Greenburgh Supervisors together, representing 9.714% of the total population of the county, will cast 9.801% of the vote on the board, and will have an effective vote of 9.855%. This is close enough *1011 to bring the plan within the limits of a rule of reason. But actually the discrepancies are smaller than they might appear ; because under the plan which the court previously disapproved Greenburgh was to have only one representative and the town’s votes could never be divided, whereas here the three representatives given to the town will not necessarily vote as a block. The indivisibility of the big block of Greenburgh votes was one of the factors which weighed heavily with the court in disapproving the last weighted voting plan.
What has been said of Greenburgh applies in some degree to each of the other towns and cities in the county. Even in those cases where the greatest discrepancies are to be found between population and effective voting strength (the Town of Somers on the plus side and the City of Peekskill on the minus side) the deviations are measured only in terms of hundredths of 1%. Most of the deviations are minuscule. Deviations much greater than any that appear here were approved by the Court of Appeals in the reapportionment of the State Legislature (Matter of Orans, 17A N Y 2d 7, 10).
The opposition to the present application comes from the City of Mount Vernon and the League of Women Voters. The opponents argue that any weighted voting plan should be rejected, and Mount Vernon advances the particular argument that such a plan creates unfairness in representation on legislative committees. The general argument against the constitutionality of weighted voting has already been rejected in this case. It was rejected also by the Court of Appeals in the lammed case (supra). The particular argument about malapportionment in committees was not accepted by Mr. Justice Nolak in this case (53 Misc 2d 88, 104-105) nor by Mr. Justice Cooke in Shilbury v. Board of Supervisors of County of Sullivan (54 Misc 2d 979).
The application of the Board of Supervisors is granted. The effect of this decision, in conjunction with that of May 21, 1968, and of the judgments entered on both decisions, is that in the absence of any appellate ruling which may be made to the contrary, the plan approved in the former decision and the plan hereby approved shall both be placed on the ballot for the general election to be held on November 5, 1968, in accordance with section 36 of the Westchester County Administrative Code (L. 1948, ch. 852, as amd.) and section 23 of the Municipal Home Rule Law. Once again the judgment should provide that the court retains jurisdiction for all purposes.