Joseph F. Hawkins, J.
The defendants, the Board of Supervisors of the County of Rockland, the Commissioners of the Board of Elections and the Board of Elections of Rockland County move for an order “ granting judgment directing the implementation of the local law adopted by the Board of Supervisors of the County of Rockland on March 11, 1969 providing for. weighted voting as an interim provision, without a referendum ”. The plaintiff cross-moves to dismiss the defendants’ motion and to direct the ‘1 reapportionment of the County of Rockland as requested by the-plaintiff ”, which proposes a 17 single-member district plan.
The late Justice Felix Frankfurter was indeed most prescient when, in his dissent in Baker v. Carr (369 U. S. 186, 268) *810 he anticipated and warned that the court’s opinion presaged: “ a disheartening preview of the mathematical quagmire (apart ' from divers judicially inappropriate and elusive determinants) into which this Court today catapults the lower courts of the country without so much as adumbrating the basis for a legal calculus as a means of extrication.”
And some two years later, Chief Justice Warren in Reynolds v. Sims (377 U. S. 533, 566) obviously recalling that dissent, noted: “We are cautioned about the dangers of entering into political thickets and mathematical quagmires.”
In the instant matter, it appears that on March 11, 1969, the defendant Board of Supervisors adopted a local law entitled: “ Local Law providing for Weighting Vote of Each Supervisor on the Board of Supervisors of the County of Rockland.” It provides for “an interim plan of weighted voting” whereby the Supervisor of each town of the existing five towns “ shall be entitled to cast at the meetings of the Board of Supervisors of the County of Rockland, a number of votes equal to the quotient, rounded to the nearest whole number, obtained by dividing the population of the town from which the Supervisor has been elected or chosen, as determined by the latest oficial federal census for the entire County, by one thousand.”
As derived from said Federal census, the number of voters in the five towns would range from 58,626 for Ramapo — the largest — to 11,704 for Stony Point, the smallest, thus yielding a product of some 194 votes and thereby resulting in the Supervisor of each said town, respectively, casting the following votes: Ramapo, 59; Clarkstown, 52; Orangetown, 50; Haverstraw, 21; and Stony Point, 12. The proponents of the interim plan, apart from urging that this complies with the constitutional requirements, plead, alternatively, that despite any mis•givings the court may have as to the permanent efficacy of .such plan, it should be approved temporarily thereby according the Board of Supervisors additional time within which to advance another and, presumably, more acceptable proposal.
The defendants further urge, inter alia, that the plaintiff is precluded from requesting the court to impose the latter’s proposed single-member district plan for the election of Supervisors advanced in the complaint since in his affidavit in support of the cross motion, plaintiff prays that the court promulgate its own plan of reapportionment hence “ the Court cannot grant plaintiff’s motion for summary judgment.” Whether labeled partial summary judgment or temporary injunctive relief, this court may tailor its relief in accordance with the facts and law existing as of the submission and not necessarily those prevail *811 ing at the commencement of the proceeding. Equity once it has acquired jurisdiction may, and should, grant relief, mindful of the real rather than nominal issues.
It should be noted that the matter at bar has been placed before the court at the defendants’ instance; it is they who seek to have the court make an affirmative direction implementing the local law and to impose, without referendum, the proposed weighted voting arrangement.
The defendants contend that the Board of Supervisors has proceeded in good faith; that some two prior taxpayers’ actions constitute res judicata; that the plaintiff’s demand for a “ specific plan of reapportionment is now a moot question, in view of the fact that the Board of Supervisors had adopted a specific plan of reapportionment, although the same is of a temporary nature ’ ’; that a plan of reapportionment is a matter of legislative prerogative rather than of judicial concern; and that the court can “enjoin” a plan of weighted voting “without a referendum” since the Board of Supervisors is making every effort, in good faith, to comply with the ‘ ‘ One-Man, One-Vote ’ ’ principle.
We do not believe that it would serve any useful purpose to review the several prior proceedings heretofore had in connection with the reapportionment of the Board of Supervisors of Rockland County. We, furthermore, have not been informed of the specific proposals for redistricting or reapportionment — they are not synonymous (Seaman v. Fedourich, 16 N Y 2d 94, 97, n. 1) —which have been defeated by the electorate of Rock-land County; nor are they now particularly relevant in view of subsequent judicial determinations. We do not deem it presently appropriate to embark upon a detailed consideration of the various contentions and points raised by the League of Women Voters of Clarkstown/Orangetown and of the Town of Ramapo who were granted leave to intervene as parties plaintiff for we regard the most recent of several opinions by our learned brother, Mr. Justice Dillon, in Town of Greenburgh v. Board of Supervisors of Westchester County (59 Misc 2d 152), coupled with the very recent opinions by the United States Supreme Court rendered on April 7, 1969, in Kirkpatrick, v. Preisler (394 U. S. 526) and Wells v. Rockefeller (394 U. S. 542) and Franklin v. Mandeville (32 A D 2d 549) is dispositive of the matter at bar.
The basic problem stemming from Iannucci v. Board of Supervisors (20 N Y 2d 244) and as further reflected in the “ refusal ” of the Court of Appeals to pass upon the validity of weighted voting in Town of Greenburgh (23 N Y 2d 733) *812 does, as phrased by Judge Billow, ‘ ‘ leave the whole concept of weighted voting in the category of dubious solutions * * As a consequence of Reynolds v. Sims (377 U. S. 533, supra) and Iannucci (supra) there apparently is no question but that the broad principles proscribing malapportioned congressional districts as unconstitutional apply with equal potency to lesser legislative bodies.
Any lingering doubts that weighted-voting proposal's are judicially unacceptable, we believe, have been impliedly dispelled by the two most recent decisions, previously cited, of the United States Supreme Court, Kirkpatrick v. Preisler and Wells v. Rockefeller (supra), the latter involving the latest congressional redistricting by our State. Although involving Congressional districts, the following principles were affirmed and reaffirmed; and they are applicable to local legislative bodies (pp. 530-531, 533): “ the State [must] make a good-faith effort to achieve precise mathematical equality. See Reynolds v. Sims, 377 U. S. 533, 577 (1964). * * * But to accept population variances, large or small in order to create districts with specific interest orientations is antithetical to the basic premise of the constitutional command to provide equal representation for equal numbers of people ’ ’.
In the latter opinion, the court further expanded on its holding in Kirkpatrick v. Preisler (p. 544): “ We hold that reversal of the District Court’s judgment is compelled by our decision today in Kirkpatrick v. Preisler, supra, which elucidates the command of Wesberry that congressional districting meet the standard of equal representation for equal numbers of people as nearly as is practicable.” (Italics ours.)
It thus follows from the foregoing that the controlling constitutional mandate is the dual equality of both franchise and representation.
The law in this area appears to be evolving daily. Apart from the two most recent decisions by the United States Supreme Court in Kirkpatrick and Wells (supra) the Appellate Division of this Department most recently, in Franklin v. Mandeville (supra), in a unanimous affirmance, expressly held weighted voting unacceptable: “On the undisputed facts presented on the motions for summary judgment, we agree with the Special Term that the weighted voting plan for the election of supervisors of the County of Nassau violated the ‘ one person, one vote ’ concept as explained in cases such as Reynolds v. Sims (377 U. S. 533), by depriving citizens of the Town of Hempstead of their .right to substantial equality of representation. That conclusion appears inescapable, in view of the fact *813 that the residents of that town constitute in excess of 57% of the population of the county, while their representatives have less than 50% of the total vote of the Board of Supervisors. Little need be added to the opinion below (Franklin v. Mandeville, 57 Misc 2d 1072) other than to note that, since the present plan of apportionment is invalid for the reason stated, it is our view that it is unnecessary to take testimony on the question of whether the plan is also invalid under Iannucci v. Board of Supervisors (20 N Y 2d 244), in that it does not accord to each legislator the voting power, measured by the mathematical possibility of his casting a decisive vote, approximate to the power which he would have in a legislative body which did not employ weighted voting.”
It thus follows that apparently the issue of whether weighted voting is a valid constitutional arrangement has shifted from the category of ‘ ‘ dubious ’ ’ to that of definite infirmity.
We are not presently concerned with either the calculus or local political realities whereby weighted voting could conceivably yield even lesser electoral equality than presently exists. We do, however, note that the intervenors contend — and it is not without some cogency — that the proposed plan might well aggravate the existing disenfranchisement of the two lesser populated towns of Stony Point and Haverstraw. Irrespective of whether or not legislative ingenuity can devise a plan of weighted voting which would produce corresponding mathematical and representational equality, the present constitutional infirmity of the premise upon which it is founded militates against further judicial sanction.
In a prior proceeding involving the very defendants, Griffith v. Board of Supervisors, in September of 1966, in declining jurisdiction because of the then continuing jurisdiction of the United States District Court, this court quoted — and we are reminded thereof by defendants — from Judge Nolan’s opinion in Town of Greenburgh v. Board of Supervisors of Westchester County (49 Misc 2d 116, 122) that “legislative apportionment is primarily a matter for legislative consideration and determination”. The remainder of that sentence — some two and one-half years later — is now significantly more pertinent: ‘ ‘ and judicial relief becomes appropriate only when a legislative body fails to reapportion according to constitutional requisites in a timely fashion after having had an adequate opportunity to do so (cf. Reynolds v. Sims, 377 U. S. 533, 586, supra).”
The intervening period has accorded the defendants sufficiently ample time.
*814 We do not believe it either appropriate or advisable to add to the abundant body of legal pronouncements or critiques on the subject of permissible plans; nor do we regard it as within the judicial function — at least at this stage of the litigation — to suggest an alternative plan. Events may make it necessary — despite our hopes to the contrary — for the court to impose a plan, as in Town of Greenburgh (supra), if the defendants fail to do so.
The issue at bar is no longer one of novel impression and there is a source of alternative plans available for consideration and adaptation by the Board of Supervisors. It is also obvious that the current political calendar compels rather expeditious action.
The motion, accordingly, is denied and the cross motion is granted only in the following respects: the defendant Board of Supervisors is directed to present to the court ‘ ‘ with all delibate speed,” a proposed plan for redistricting and/or reapportionment. In the interim, this’ court will continue its jurisdiction, reserving the right to hold such hearings and to hear such argument in conjunction with such proposed plan as it may deem appropriate. We further commend to the defendant Board of Supervisors that the phrase “with all deliberate speed ” (Brown v. Board of Educ., 349 U. S. 294), is intended to be construed so as to accord adequate opportunity for due consideration — public and judicial — and for implementation, reasonably and adequately in advance of the coming general election.