Henry A. Hudson, J.
The plaintiffs are citizens, residents and voters of Oswego County, New York entitled to vote for Supervisors in the political subdivision in which they reside. They have moved for .summary judgment pursuant to CPLR 3212, in the action instituted by them for a declaratory judgment. In the action they seek a determination that section 150 of the County Law and all other provisions of such law and of any other statutes of the State of New York which pertain to the selection of the Board of Supervisors of Oswego County hereinafter referred to as the Board, are unconstitutional as violative of the Fourteenth Amendment of the Constitution of the United States and of section 11 of article I of the Constitution of the State of New York. They contend that the voting strength of the members of the Board representing the smaller towns is completely disproportionate to that of those Supervisors representing the various towns of the county and the wards of the Cities of Fulton and Oswego in said county, which have large populations, in that each town and ward is represented on such Board by only one Supervisor who has but one vote as a member of such Board. As a result they contend that proper representation on the Board as guaranteed by the Constitution, commonly referred to as “ One Man — One Vote ”, is not available to the plaintiffs and all other citizens similarly situated.
The plaintiffs seek relief implementing the effect of such a declaration. They ask that the court enjoin the Board from acting in their collective capacity until such county is redistricted or reapportioned so that the future members of the Board will be composed of representatives, who will be elected from areas whose population will be substantially equal in population or that a plan of weighted voting be adopted so that the voting strength of each Supervisor will be substantially equal. They further request that the court grant temporary relief by directing that a system of weighted or fractional voting be adopted by the Board until such time as permanent redistricting or reapportionment can be accomplished. They further *418 request that the court retain jurisdiction of the action pending the final accomplishments of the relief sought by them.
The material facts do not appear to be in dispute. Oswego County is composed of 22 towns and 14 wards in the Cities of Oswego and Fulton making the total membership on the Board of Supervisors of 36. Each is entitled, as a member of the Board to cast one vote. Under the 1960 census the population of the City of Fulton was 14,261 and of the City of Oswego 22,155. The total population of the county was 86,118. There was a population variance in the towns of from 293 in the Town of Boylston to 5,554 in the Town of Schroeppel, a variance in the City of Oswego from 1,501 in the Second Ward to 4,272 in the First Ward and a variance in the City of Fulton from 1,932 in the Fourth Ward to 3,512 in the Second Ward. It is, therefore, apparent that there is a great disparity in the number of people represented by the various Supervisors of Oswego County. The representative of 293 people living in the Town of Boylston has an equal vote to that of the representative of the 5,554 people living in the Town of Schroeppel. The constitutional guarantee of equal representation is clearly violated.
Since the decision of the Supreme Court of the United States, in Reynolds v. Sims (377 U. S. 533), the question has been passed upon by the courts in respect to many of the counties of this State. In every instance coming to my attention, section 150 of the County Law and all other statutes of the State and any local law which in any way provides for the right of every Supervisor to have the same vote on a Board regardless of the population of the area which he represents have been held to be unconstitutional. (Treiber v. Lanigan, 48 Misc 2d 434, mod. 25 A D 2d 202, further mod. 25 A D 2d 937; Shilbury v. Board of Supervisors of Sullivan County, 46 Misc 2d 837, affd. 25 A D 2d 688; Graham v. Board of Supervisors of Erie County, 49 Misc 2d 459, mod. 25 A D 2d 250, app. dsmd. 17 N Y 2d 866; 26 A D 2d 772, mod. 18 N Y 2d 672; Town of Greenburgh v. Board of Supervisors of Westchester County, 49 Misc 2d 116, 120.) As a result more than half of the counties of the State have either corrected the disparity in representation by adopting a permanent plan of redistricting or reapportionment or at least have adopted a temporary or interim scheme for weighted or fractional voting or multimember constituency apportionment.
The Court of Appeals in its decision of October 8, 1969, in Abate v. Mundt (25 N Y 2d 309) approved as constitutional a permanent multimember constituency apportionment scheme. The dissenting Judges would approve the plan as a temporary *419 or interim plan only. It had previously held unconstitutional a permanent plan of weighted voting. For the most part, however, multimember apportionment and weighted voting plans have been approved as a method of temporary or interim voting pending the adoption of a permanent redistricting or reapportionment plan. The permanent plan has usually been accomplished either by continuing the Board of Supervisors as such with each member having proportional voting power, determined by computer, or through the adoption of a County Legislature under article 4 of the Municipal Home Buie Law, with accompanying redistricting.
The court has jurisdiction of the subject matter of the action. (Seaman v. Fedourich, 45 Misc 2d 940, 942; Treiber v. Lanigan, 48 Misc 2d 434, 436, supra; Shilbury v. Board of Supervisors of Sullivan County, 46 Misc 2d 837, 841, supra.)
The court has the power to require valid reapportionment and to formulate redistricting. (Scott v. Germano, 381 U. S. 407, 409-410.)
Summary judgment is granted to the plaintiffs herein to the extent that the present Board, as constituted, is not a constitutionally appointed body and does not provide the “ One Man— One Vote ” principle of representation as contemplated under the Constitution. Section 20 of the Town Law and section 150 of the County Law and any other statute or local law under which the Board is established must be held to be unconstitutional.
There remains for consideration the relief to be awarded the plaintiffs. It was conceded by the defendant county that the Board had had under consideration the adoption of some plan of weighted voting or redistricting for some time so as to give effect to the so-called, “ One Man — One Vote ” doctrine. It is, therefore, undisputed that the problem has been one which the Board has been aware of for a sufficient period of time so that it cannot be heard to complain that it has not known of the necessity of providing 'some form of redistricting or reapportionment. It was urged by the County Attorney and by the Attorney-General that the insistence of the plaintiffs that action should be taken by the Board to provide a permanent plan of redistricting in time for the November, 1969 election to replace the present Board was unreasonable and in fact would impose an impossible task. The Attorney-General pointed out that in fact it would be impossible to prepare even a plan of weighted voting for the reason that under the recent decisions of the appellate courts of this State'in respect to the constitutionality of a weighted voting plan, it had been recognized that the only *420 method of determining the weight to be given to each member of the Board of Supervisors when the Board was composed of as many as 36 Supervisors would be by the use of computer and that in the case of such a large body, a substantial amount of computer time would have to be available. He urged that in view of the great demand for the services of computers by other counties which were involved in similar litigation, it would be a practical impossibility to obtain the necessary computer time to prepare the figures for a constitutional weighted voting plan and then to submit the necessary proof by expert testimony to support court approval of its constitutionality in time for an election in 1969.
The action itself was instituted by the plaintiffs on October 23, 1968 and issue was joined in November of that year. The plaintiffs did not move for summary judgment and the other relief requested until June 5, 1969. It was not finally submitted to the court by all parties until late in July, 1969. The court was satisfied upon the argument of the motion that it would be a practical impossibility for any permanent plan for either redistricting, reapportionment or for weighted voting to be available to the voters of the County of Oswego for submission at the November election in that same year. It was further urged by the County Attorney and by the Attorney-G-eneral that any permanent or interim voting plan which could be considered in the immediate future would have to be based upon the United States Census taken in the year 1960 and that such figures would not permit a constitutional plan to be prepared, due to large changes in population which have occurred since 1960.
They pointed out that there had been in several of the political subdivisions of the County of Oswego very substantial changes in population, among them those arising by reason of the increase in the enrollment and facilities within the past few years of the State University in the City of Oswego and that a directive dated May 2,1966 had been issued by the United States Department of Commerce, a copy of which was attached to the answer of the State of New York, requiring students enrolled in colleges to be recorded upon the taking of the census in 1970 as residents o,f the locality in which they were attending college. As a .result there would be in several of the wards of the City of Oswego, a substantial increase in the population thereof when the 1970 census is taken. They, therefore, urge that no constitutional plan can be adopted until the 1970 census figures are available.
The plaintiffs insist that the 1960 census should be adequate as the basis for any redistricting or weighted voting plan.
*421 The court is of the opinion that the permanent plan of redistricting which will ultimately be decided upon will either be to divide the county into districts of equal population, which will each have one representative, or to provide a permanent plan of weighted voting. Either such plan should be based upon the latest population figures reasonably available. It would be most impractical to use population figures of 10 years’ standing. To do so, it would seem, would automatically make a determination based thereon unconstitutional. It could not meet the requirements of “ One Man — One Vote ”.
At the time of the argument of the motion, steps were already in progress for the selection of Supervisors to be elected in November, 1969. The court was satisfied that any precipitous action to force a redistricting of the county and provide for elective representatives therefrom within the four-month period remaining before the November, 1969 election would have been completely impractical.
Legislative reapportionment or redistricting at the county level has been repeatedly held to be a matter for legislative consideration and determination in the first instance and judicial relief is considered appropriate only when the legislative body fails to provide the same in a timely fashion after an adequate opportunity is provided to develop a constitutionally acceptable plan. (Reynolds v. Sims, 377 U. S. 533, 586, supra; Graham v. Board of Supervisors, 25 A D 2d 250, 253, supra; Town of Greenburgh v. Board of Supervisors, 49 Misc 2d 116, 122, supra.)
The court will not, therefore, undertake to formulate a plan for Oswego County in the first instance but will direct that the Board which took office January 1, 1970 shall prepare a permanent plan to redistrict Oswego County or a permanent plan to reapportion the voting weight of each Supervisor in order to give effect to the principle of “ One Man — One Vote” in achieving a constitutional reapportionment in line with the decisions of the Court of Appeals applying thereto.
(Shilbury v. Board of Supervisors, 46 Misc 2d 837, 843, supra; Trieber v. Lanigan, 48 Misc 2d 434, mod. 25 A D 2d 202, 937, supra; Fisher v. Board of Supervisors of Ontario County, 59 Misc 2d 953, 956; Graham v. Board of Supervisors, 25 A D 2d 250; 26 A D 2d 772, mod. 18 N Y 2d 672, supra; Town of Greenburgh v. Board of Supervisors, 49 Misc 2d 116, 122, 123, supra; Honig v. Board of Supervisors of Rensselaer County, 31 A D 2d 989, wherein the court stated: “ We note, however, the imminence of the spring primary election, the first day for signing designating petitions being but three weeks aWay; we *422 give consideration to the probability that the 1970 census figures will be available during the life of the board to be elected in 1969; and we consider, further, that, if employed as a temporary measure, the plan before us, having been adopted by the representative body, is preferable, generally and despite some measure of infirmity, to a plan to be fashioned by the court, as would otherwise be necessary in this case, by reason of the present time exigencies. In reaching this conclusion we have considered and rejected the alternate plans presented, including that which provided for weighted voting. That plan, approved by the board as one of three alternatives, was properly rejected by Special Term inasmuch as it was demonstrated by computer analysis that the disparity of effective voting power and the actual percentage of population between districts was excessive, that between proposed districts 1 and 20, for example, being in excess of 7%.”)
The final plan should not be effectuated until the population, figures for the Cities of Fulton and Oswego and the County of Oswego, as determined by the 1970 census, are available. The basic plan to be adopted should be decided upon in time to submit to the voters of Oswego County if the Board deems it necessary to submit a choice of plans to the voters at the general election to be held in 1970. This can and should be possible without the necessity of working out the district lines or the percentages of weighted voting which will be used and for which the 1970 census figures will be necessary. The final permanent plan shall be adopted within 90 days after the census figures from the 1970 census are available and in no event later than April, 1971 unless otherwise ordered by the court.
The use of the 1970 census figures has been indicated and referred to with approval in Franklin v. Mandeville (26 N Y 2d 65), decided January 14, 1970, by the Court of Appeals. (See, also, Honig v. Board of Supervisors of Rensselaer County, 31 A D 2d 989, supra; Fisher v. Board of Supervisors of Ontario County, 59 Misc 2d 953, supra; Duquette v. Board of Supervisors of County of Franklin, 32 A D 2d 706.)
The courts have approved as constitutional a permanent plan which required the county to be divided into districts of equal population, each having one representative on the County Legislature.
Iannucci v. Board of Supervisors, 27 A D 2d 346, mod. 20 N Y 2d 244 to provide the Board of Supervisors 60 days instead of 10 days to submit plan.
*423 This case involved reapportionment in Washington and Saratoga Counties. Justice Heklihy stated ( 27 A D 2d 347):
61 In our opinion weighted voting on the county level, although not as unrepresentative as the historical representation by Town Supervisors, is unconstitutional and the only practical solution to the problem of reapportionment is by the method of district representatives based on population or, perhaps, by the countywide election of Supervisors at Large. * * *
‘ ‘ District representation, based on population while it will when properly drawn apparently ignore historic town lines as political subdivisions, will eliminate inherent evils in weighted voting both in the present time and in the future. It is not. a question of percentage or degree but rather of equal representation. Districting results in a relatively simple apportionment, which should be readily adjustable in accordance with any variance discovered with each Federal decennial census. We would further note that with the districting system there should be little difference in the actual number of people in each district. ’ ’
On appeal Judge Fuld stated (20 N Y 2d 254): “ It is claimed that, if these counties were divided up into districts of equal population, the smaller towns would, of necessity, lose their identity because they would be combined with the larger industrial communities in the county, creating districts thereby lacking in mutual sentiments and interests. This result, however, is not inevitable; we have barely crossed the threshold in exploring the variety of devices which may be employed, consistent with the constitutional mandate of one man — one vote, to assure that the points of view of the smaller towns in the county will be heard on the Board of Supervisors.”
Town of Greenburgh v. Board of Supervisors, 59 Misc 2d 152, affd. 32 A D 2d 892, affd. 25 N Y 2d 817.
This case resolved by court determination, the establishing of a county legislative body based on 17 substantially, equally populated districts after a long series of unsuccessful weighted voting schemes which had either been held to be unconstitutional or had been rejected by the voters. It involved reapportionment in Westchester County, a most difficult county to reapportion.
Abate v. Mundt, 25 N Y 2d 309, supra.
This case involves the establishing of a multimember constituency, apportionment plan in Rockland County. Rockland *424 County is unusually constituted in that there are no cities and but five towns — the smallest town being approximately 12,000 and the largest 73,000 in population. They are for practical purposes, divided by 12 and assigned one legislator for the smaller up to six for the larger, in all, 18 legislators. A majority of the Court of Appeals held the method constitutional, a minority that it is only satisfactory as a temporary plan.
(Treiber v. Lanigan, 48 Misc 2d 434, mod. 25 A D 2d 202, mod. on reargument 25 A D 2d 937.)
The courts have approved as constitutional plans for weighted voting but in most instances have approved them as interim or temporary plans until a permanent plan could be developed.
In Iannucci v. Board of Supervisors (27 A D 2d 346, supra) Justice Herlihy on page 347 spoke with disapproval of weighted voting as follows: “ Weighted voting as thus far presented to .this court (and see Graham v. Board of Supervisors of Erie County, 18 N Y 2d 672, 674) cannot satisfy the mandate of Reynolds v. Sims (377 U. S. 533) of ‘ one person, one vote \ The inherent problem of over or under representation is caused not by the amount of the weight involved in a particular ward or town, but by the very existence of the weighting system. While weighted voting cures the previous favoritism in areas of smaller population, it by the very system itself creates new inequities in terms of power. Representatives of the larger districts, because of the weighting of their votes, necessarily have greater influence over the passage of legislation. The result is discrimination against the smaller districts. The suggestion that weighted voting can, by a complicated mathematical ratio of population be constitutional in some instances is only begging the question and will cause the continued submission of various plans which will only delay the solution of the problem.”
In the Court of Appeals (20 N Y 2d 244) at pages 252-253, Chief Judge Fulo stated:
‘1 In order to measure the mathematical voting power of each member of these county boards of supervisors and compare it with the proportion of the population which he represents, it would be necessary to have the opinions of experts based on computer analyses. The plans, then, are of doubtful constitutional validity and to establish the facts one way or another would, in all likelihood, be most expensive. In our view, it was incumbent upon the boards to come forward with the requisite proof that the plans were not defective. ’ ’ and at page 254:
*425 “ With respect to weighted voting, however, a considered judgment is impossible without computer analyses and, accordingly, if the boards choose to reapportion themselves by the use of weighted voting, there is no alternative but to require them to come forward with such analyses and demonstrate the validity of their reapportionment plans.
“We may not overlook the very real danger in these reapportionment cases of the courts being unnecessarily dragged into a ‘ mathematical quagmire ’ (Baker v. Carr, 369 U. S. 186, 268 (per Frankfurter, J., dissenting), understood only by experts using computers. ’ ’
The problems which can arise out of efforts to develop a permanent weighted voting plan can best be understood from the long legal controversy covered in the following decisions. The ultimate result was that the court itself directed a redistricting in Town of Greenburgh v. Board of Supervisors, 59 Misc 2d 152, affd. 32 A D 2d 892, affd. 25 N Y 2d 817, supra).
The controversy started with the first decision of Justice Nolan in Town of Greenburgh v. Board of Supervisors (49 Misc 2d 116). In this case the then Board of Supervisors was held to be unconstitutional and a reapportionment plan ordered.
In the same case (51 Misc 2d 168) a proposed local law was held invalid. Two unreported decisions then followed, one of August 23, 1967 was held valid but rejected by the voters in a referendum and on May 21,1968 was held valid and affirmed by the Appellate Division (30 A D 2d 708) but again was defeated in a referendum.
In 57 Misc 2d 1008, the proposed local law was approved. Upon presentation to the voters, it was rejected. The Court of Appeals reversed on the ground that the issues were moot (23 N Y 2d 732).
All possible questions were considered by the courts in these various decisions and the question resolved by redistricting (59 Misc 2d 152, affd. 32 A D 2d 892, affd. 25 N Y 2d 817, supra). (Dobish v. State of New York, 54 Misc 2d 367, 372; Fisher v. Board of Supervisors of Ontario County, 59 Misc 2d 953, 956, supra.)
The Board of Supervisors shall on or before May 1, 1970, adopt a temporary plan of weighted voting based upon the 1960 census figures for the Cities of Fulton and Oswego and the County of Oswego which shall apply to voting by the Supervisors of Oswego County until the effective date of the permanent plan to be adopted. (Fisher v. Board of Supervisors of Ontario County, supra; Pokorny v. Board of Supervisors of *426 Chenango County, 59 Misc 2d 929, 934; Honig v. Board of Supervisors of Rensselaer County, 31 A D 2d 989, supra.)
Pending the adoption of the temporary weighted voting plan as above provided, the Board shall continue to function as presently constituted. Upon the adoption of the temporary weighted voting plan, the Board .shall continue to function thereunder until the adoption of and the effective date of the permanent plan herein ordered.
The court will retain jurisdiction of the present action to insure full compliance with the provisions of this decision and to that end, subject to the further order of the court, this proceeding is adjourned until May 11, 1970, at the County Court House in the Village of Pulaski, Oswego County, N. Y., at which time the temporary weighted voting plan herein ordered shall be submitted and the status of the plans of the Board relative to a permanent plan of reapportionment shall be presented to the court. If necessary, the court will take proof as to the validity of the temporary weighted voting plan and will entertain an application for such other and further relief as may be just and proper.
It has been urged that the Cities of Oswego and Fulton are necessary parties to this action. I do not consider they are necessary parties but I do feel they are proper parties and should be joined as parties herein. (Barzelay v. Board of Supervisors of Onondaga County, 47 Misc 2d 1013, 1015.)