(51 Misc. Rep. 397.)

PAYNE et al. v. O'BRIEN, Secretary of State.

PENDLETON v. SAME.

(Supreme Court, Special Term, Rensselaer County.  August, 1906.)

1. STATES—LEGISLATIVE APPORTIONMENT—CONSTITUTIONAL LAW.

Apportionment Act of 1906, Laws 1906, p. 1032, c. 431, being in compliance with all the constitutional provisions except paragraph 1, art. 3, § 4, providing that each senate district shall contain as nearly as may be an equal number of inhabitants, which provision is violated in regard only to the Queens-Richmond district, having nearly three times as great a population as the smallest senate district, it does not render such act unconstitutional, the phrase "as nearly as may be" giving discretionary power to the Legislature.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, States, § 31.]

2. SAME—SENATORIAL DISTRICTS.

Const. art. 3, § 4, providing that each senate district shall at all times consist of contiguous territory, and the Legislature being prohibited by Const. art. 3, § 3, from dividing any county in the formation of senatorial districts, so that Richmond could not be united to either New York or Kings county, Queens county was the most contiguous territory to Richmond with which it could be joined to form a senate district.

Application by George E. Payne and Harry C. Perley for mandamus against John F. O'Brien, Secretary of State, and application by Walter Pendleton for mandamus against the same defendant. Motions denied.

Edward B. Whitney and Robert G. Monroe, for George E. Payne and Harry C. Perley.

William A. Shortt and Eugene L. Richards, Jr., for Walter Pendleton.

Julius M. Mayer, Atty. Gen., James G. Graham, Deputy Atty. Gen., and Merton E. Lewis, for John F. O'Brien, Secretary of State.

HOWARD, J. These proceedings have for their purpose the testing of the constitutionality of chapter 431, p. 1032, of the Laws of 1906. Section 4 of article 3 of the Constitution points out the manner in which the state shall be divided into senatorial districts. It imposes certain requirements; among them are: (1) That each district shall contain as nearly as may be an equal number of inhabitants except aliens, and (2) be in as compact form as practicable, and (3) shall at all times consist of contiguous territory; (4) that no county shall be divided in the formation of the senatorial districts except to make two or more senatorial districts wholly in such county, and (5) that counties, towns or blocks which from their location may be included in either of two districts shall be so placed as to make said district most nearly equal in the number of inhabitants. Other conditions and requirements are incorporated in the section which it is not necessary here to consider.

It is contended by the relators that the first, second, third, and fifth requirements, as above indicated, were violated by the Legislature in the enactment of chapter 431, p. 1032, of the Laws of 1906. Another provision of the Constitution fixes absolutely the number of senatorial districts to be laid out by the Legislature in New York, Kings, and Erie counties, and thus establishes, beyond the reach of the Legislature, 23 senatorial districts. The provisions of the Constitution as to the equality of population, compactness, and contiguity, together with the situation of the counties, dispose of eight other districts, so the respondents contend, and it is not disputed by the relators, thus arbitrarily creating 31 senatorial districts so that it is beyond the power of the Legislature to change them. In arranging the remaining 20, it is claimed by the relators that the Legislature has violated the provisions of the Constitution by creating districts which do not contain, as nearly as may be, an equal number of inhabitants. The principal complaint in this particular is directed to the second or Queens-Richmond district. Comparisons are made between this district and several other senatorial districts. The Forty-second district, which is the smallest one in the state, contains 97,717 inhabitants; whereas the Queens-Richmond district contains 246,187 inhabitants, or nearly three times as great a population

as the Forty-second district. On the face of it this would appear to be a fatal error, and to be a gross and deliberate violation of the Constitution; but it will be observed that the Legislature was confronted with many requirements—at times conflicting requirements—all of which they were bound to observe, and, in endeavoring to do so, one may appear to have been violated. That the Legislature violated the requirement in regard to the equality of inhabitants might be debatable, had it not already been settled and determined by the Court of Appeals in this state.

In regard to the apportionment which is being attacked, only this one instance, the Queens-Richmond district, has been pointed out as gross and flagrant; whereas, in People ex rel. Carter v. Rice, 135 N. Y. 473, at page 512, 31 N. E. 921, 933, 16 L. R. A. 836, Judge Gray, in his opinion says:

"The showing of three instances of departure from a methodical apportionment is not enough to evidence any deliberate violation of the constitutional requirement."

The discrepancy complained of in this apportionment is between the Second district, containing 246,187 inhabitants, and the Forty-second district, containing 97,717 inhabitants. These districts are widely separated. They are affected by the rule providing that counties cannot be divided in forming senatorial districts, and by the requirement of contiguity; whereas, in the Carter Case, two districts lying in the city of New York were created—one having a population of 241,138, and the other of 105,720 inhabitants. The difference between the variation in the present apportionment and that considered in the Carter Case is not substantial; and yet the Court of Appeals sustained the apportionment in the Carter Case, the court saying:

"Certain districts may be picked out from the whole number and compared with certain others and inequality charged against them. But when all the counties in the state are to be arranged and brought into connection upon some plan in which the express commands of the Constitution as to contiguous territory and county lines are to be observed, it will pass the wit of man to make such an alteration of the senate districts for this state that they may not be the subject of adverse criticism and of alleged possible improvement."

And, in this connection, it should be observed that the requirement of equality does not override all other considerations. It was the idea of the Constitution that territory should be represented. This is evidenced by the provision of the Constitution that no county shall have more than one-third of all the senators, and that no two adjoining counties shall have more than half, and by the provision that no county shall have four or more senators unless it shall have a full ratio for each senator. This idea prevails in the Constitution of the United States, concerning the representation of states in the United States Senate, the smallest state having as many representatives in that body as the largest. And in the Carter Case it is said:

"It is not true that equality of numbers in representation has been the leading idea at all times in regard to republican institutions."

The Constitution provides that the districts shall consist of contiguous territory. Richmond county is not contiguous to any other territory

101 N.Y.S.—24

in the sense that it touches it. Contiguous is defined by Webster to be "in actual contact; touching; also, adjacent; near, neighboring; adjoining." And in Houghton County v. Blacker, 92 Mich. 638, 52 N. W. 951, 16 L. R. A. 432, it was held that, so far as island counties are concerned, they may be contiguous, although separated by wide ranges of navigable deep waters. The Legislature was prevented from joining Richmond to either New York or Kings counties because, in order to do so, it would have been necessary to divide those counties in forming a senatorial district, which they are prohibited from doing. Therefore, the Legislature found that Richmond county must be joined to some county other than those. The most contiguous county, that is, the nearest county to Richmond other than those two, is Queens, and with that county Richmond is joined to form a senatorial district. In the rejected apportionment of the state, which is made an exhibit in these proceedings, it was proposed to join Richmond with Rockland county, 25 miles away. It is now united with Queens, only 8 $^8/_{10}$ miles away. If there can be any such thing as degrees of contiguity, Richmond county is joined with the most contiguous county with which it is possible to join it. Never in the history of the state has Richmond county been joined with other than an island county—never to the mainland. All previous constitutional conventions and legislatures which have undertaken to apportion senatorial districts have considered that Richmond county should be so disposed of. The growing population of the state and the changed conditions since the adoption of the Constitution presented problems difficult, if not impossible, to solve, when the Legislature approached the question of apportioning senate districts, guided by the Constitution. The very fact that counsel for the relators do not agree—some thinking that Richmond should be joined with Rockland, others that it should be joined with Suffolk, and others that it should constitute a senatorial district alone; some that the rule of contiguity had been violated, others that it had not—indicates how utterly impossible it is that any apportionment of the state could be made which would commend itself to everybody.

After having complied with the inexorable conditions and rules governing its conduct as nearly as it could, as it thought, it seemed wise to the Legislature to unite Richmond county with Queens. That other and perhaps better arrangements could have been made and districts formed may be true, but the mere fact that a better plan might, in the opinion of some, be devised is insufficient to warrant the overthrow of this law. The rule of practical construction of the word "contiguity," as defined in the books, in my judgment completely disposes of the alleged infraction of the Constitution in that respect. Every presumption is in favor of the constitutionality of a statute, and if there is any doubt as to its constitutionality, the question should be resolved in favor of the statute, for to doubt its constitutionality is to favor the statute.

In the Carter Case it was said:

"Before courts will deem it their duty to declare an act of the Legislature void, as in violation of some provision of the Constitution, a case must be presented in which there can be no rational doubt."

Having in mind this rule and the fact that no partisan advantage is charged to have been gained, can it be said that the Legislature, confronted as it was by the many difficult and intricate problems which presented themselves and which no man could solve perfectly, violated the letter and spirit of the Constitution? I think not. The result which may follow from a construction of the Constitution is always a potent factor to be considered. That the granting of this order would produce endless confusion cannot be doubted. It seems to me that the discretion necessarily vested in the Legislature by the expression "as nearly as may be"; that the examples set before it not only by all previous Legislatures and constitutional conventions, but by the Constitution itself; that the judicial sanction of the last legislative apportionment by the highest court in the state, all warranted the Legislature in creating the law which is now attacked.

The motions should be denied, with costs.

Motions denied, with costs.