Wallace B. Cotton, J.
In this consolidated proceeding plaintiffs John Calandra et al. and Herman Badillo et al., seek among other things, a declaration that Local Law No. 4 (Local Laws, "1973, No. 4 of City of New York) title ZB “ Couneilmanic Districts ’ ’ which established a plan for 33 new couneilmanic districts in the City of New York to be voted upon in the primary election to be held on June 4, 1973 and the general election in November of this year is invalid and in addition violative of the plaintiffs’ rights to equal protection as guaranteed under section 11 of article I of the New York State Constitution and the Fourteenth Amendment of the United States Constitution.
The plaintiffs further request that the court enjoin the defendant Board of Elections from using the districts described in title ZB in its preparation for the forthcoming elections and that the court promulgate a fair and equitable plan of describing the 33 districts of convenient and contiguous territory in as compact form as practicable for use in the ensuing election.
*838 From the oral evidence adduced at the trial, the filed papers and exhibits, it appears that the New York State Legislature enacted a law requiring the New York City Council to establish a plan for 33 new councilmanic districts by February 1, 1973 (L. 1971, ch. 1206).
Pertinent to this proceeding is that the language of the aforesaid law among other things, provided: ‘ ‘ Such local law shall describe the boundaries of such districts in such manner that such districts shall be created on the basis of the last preceding federal census, as nearly equal in number of inhabitants or in number of citizens, as is practicable, of convenient and contiguous territory and in as compact a form as practicable ” (L. 1971, ch. 1206, § 1, amdg. New York City Charter, § 22, subd. f).
Thereafter in or about May or June of 1972, a special committee of the City Council commmenced work on the reapportionment plan.
The evidence is clear that the intent of the Council’s committee was at all times to conform with the ‘ ‘ one man, one vote ’ ’ principle of apportionment as mandated by the quoted statute and our highest court in Baker v. Carr (369 U. S. 186); Reynolds v. Sims (377 U. S. 533); Dusch v. Davis (387 U. S. 112). The results of the apportionment reflect this to an extraordinarily precise degree as does the report of the committee dated December 22, 1972.
The apportionment of councilmanic' lines in conformance with local, State and Federal requirements in the City of New York is one of tremendous magnitude for not only does the city have one of the largest populations in the world, but its topography is totally irregular consisting primarily of islands and a peninsula.
The 1970 census reports reflect that the city had a total population of 7,895,563 citizens scattered over the five boroughs, as follows: Bronx, 1,471,701, Brooklyn, 2,602,012, Manhattan, 1,539,-233, Queens, 1,987,174, Richmond, 295,443. Since 33 districts were mandated, the total population was divided by 33 to establish a population “ mean ” of 239,259 for each councilmanic district.
From the population figures set forth above, it is apparent that the Borough of Richmond hack a population excess of 56,000 above the mean, thus precluding the possibility of placing it in one councilmanic district. Thus, the Borough of Richmond, on its face, necessitated apportionment in such a manner that it be linked with such other borough or boroughs of the city not only to absorb the excess of population so as to come within the ambit of the “ one man, one vote ’’ mandate, but to conform to the addi *839 tional statutory and constitutional requirement that the districts be contiguous, convenient and as compact as practicable. Fur-, ther anaylsis of the census figures revealed that by reason of population shifts certain areas of The Bronx, Queens and Man-, hattan had been left underrepresented, in violation of the “ one man, one vote” principle. The evidence demonstrates that substantial efforts were made to rectify the underrepresented areas to bring them within the ambit of the constitutional mandate of “ one man, one vote ”, with the net result that at the conclusion of the reappórtionment there remained small pieces of Manhattan, Bronx and Queens which were joined together and ultimately became the Eighth Councilmanic District, as well as in Richmond, Manhattan and Brooklyn, which were joined together to create the Second and Thirty-third Districts.
The bill was passed by the Council on December 22,1972. On January 16, 1973, the Mayor vetoed the bill. On January 18, 1973, the Council overrode the veto and Local Law No. 4 became effective.
From the evidence, it is clear that the over-all result of the apportionment of the 33 councilmanic districts as they relate to the population and equal representation is computer perfect, for the maximum variance between any of the districts is less than l/10th of 1%. Plaintiffs argue, however, that the reapportionment fails to satisfy the additional requirements of contiguity, convenience and compactness as practicable, as required by the appropriate statutes and case law.
In fairness to the City Council, it must be noted that the City of New York is substantially heterogeneous rather than homogeneous. Thus it would be an impossible task to find 239,000 people (the requirement of each district) with common ethnic and economic backgrounds that resided in an area that would be contiguous, convenient and compact,, even if such was desirable. A walk down a main street of any of our boroughs is sufficient to demonstrate this.
While evidence was introduced to show the manner in which community planning districts are drawn with an emphasis on compactness with placement of local services such as fire, police, and sanitation, within a particular district, it was also revealed that equality of population of such districts was not a substantial factor, and that the maximum population each district had was 125,000. Quite obviously, this is far less than required in the apportionment of the councilmanic lines and not susceptible to conformance with the rule of “ one man, one vote ”.
At the trial plaintiffs offered proof as to their contentions that Councilmanic Districts Nos. 2, 8 and 33 did not satisfy the *840 requirements ‘1 of convenient and contiguous territory and in as compact form as practicable ” as required by the statute.
The Court of Appeals has stated in interpreting essentially similar language as is in issue herein in the case of Matter of Schneider v. Rockefeller (31 N Y 2d 420, 429) that “ ‘ Contiguous territory ’ we have said, means ‘ territory touching, adjoining and connected, as distinguished from territory separated by other territory ' (Matter of Sherill v. O' Brien 188 N. Y. 185, 207). The term ‘ compact \ on the other hand, has no precise meaning within the context of the constitutional mandate. Moreover, the Constitution does not provide unqualifiedly for compactness. (Matter of Sherrill v. O’Brien, supra.) At a minimum the [Stq,te] Legislature may, in good faith, take account of existing political subdivision lines, topography, means of transportation and lines of communication without violating this standard. (Matter of Sherrill v. O’Brien, supra.) ”
As stated above, the law reflects a certain degree of flexibility in determining the issues of contiguity, convenience and compactness of political subdivisions. It is, however, the opinion of this court that there is a distinction between practical flexibility and strained and tortured contortions.
The Second Councilmanic District consists of portions of Manhattan and Richmond. That portion which is in Manhattan extends from Central Park North (110th Street) on the north, to Spring Street on the south and from the Hudson River to the low water mark of Long Island (which is the boundary of the Borough of Manhattan, Administrative Code; of the City of New York, § 2-1.0, subd. 1) for approximately 2d blocks to the west and east. It is to be noted that the .southern tip of Manhattan, which is closest to Richmond, is not located in the Second District, but is in fact the Third. The portion cf the Second, which is in Richmond, is on the eastern portion of the island taking in the communities of Great Kills, Dongan Hills and other territory. Although there is law. indicating that the Borough of Richmond is contiguous to numerous other counties in the State (see Matter of Payne, 51 Misc. 397; Matter of Reynolds, 202 N. Y. 430), it is to be noted that unless the representative of the Second District travels by air or private boat! it is impossible to travel from the Manhattan portion of the district to the Richmond portion without traversing either the Third and First Councilmanic Districts or New Jersey and the First Council-manic District. That portion of Richmond which is most contiguous to Manhattan is in the First Councilmanic District, and in fact portions of the Third Councilmanic District and the *841 First Councilmanic District presently coiistityte the sixty-second Assembly District.
The Richmond portion of the second is no more contiguous to the Manhattan portion of the second than it would be to the Fourth, Fifth, Sixth or Tenth Councilmanic Districts, each of which shares the Hudson River as a westerly boundary.
The Schneider case (31 N Y 2d 420, 430, supra) continues that “the- requirement of contiguity is not necessarily violated because a part of the district is divided by water, (Matter of Reynolds, 202 N. Y. 430, 442-443; Ince v. Rockefeller, 290 F. Supp. 878.) Moreover; in none of the cited examples is it necessary to travel through an adjoining district to keep within the boundaries of the challenged district.”
Clearly even within' the flexible limits set forth in Schneider, e.g., topography, means of transportation, etc., the Second Councilmanic District does not comply with the requirements of “ convenient and' contiguous territory in as compact form as practicable ”, as it is in fact separated by another district.
The Eighth Councilmanic District is located in three boroughs, Manhattan, Queens and The Bronx. A triboro district is not without precedent, as plaintiff Badillo represented one in Congress.
There is no question that those portions located in Manhattan and The Bronx are contiguous as they are connected by the Willis Avenue Bridge and connection by a bridge is sufficient under the law (Wells v. Rockefeller, 311 F. Supp. 48). That portion which is located in Queens, however, presents a problem in terms of the afore-mentioned standards. Nowhere does it adjoin, touch or is connected to the other two subdivisions of the district.
Defendants urge that there is nothing but water between the Queens portion and the Manhattan portion, and the requirement of contiguity is not necessarily violated because part of a district is divided by water. This interpretation of the law is correct and is supported by substantial case law (Matter of Reynolds, 202 N. Y. 430; Ince v. Rockefeller, 290 F. Supp. 878; Schneider v. Rockefeller, supra), but a reading of the district descriptions in the reapportionment statute reveals that the contiguity of the Eighth Councilmanic District is not merely disturbed by water, but by the Stated boundaries of the Seventh Councilmanic District.
The district word descriptions use the language “the Manhattan Borough line in the waters of the East River”; the Administrative Code of the City of New York (§ 2-1.0, subd. 1) *842 states that the Manhattan. Borough boundaries are ‘ ‘ across the East River to the low-water mark on the shore of Long Island, so as to include Randall’s island and Ward’s island; thence along the low-water mark on the shore of Long Island to the southerly side of Bed Hook ’ ’. The Seventh Councilmanic District begins and ends at the “the Manhattan borough line in the waters of the East Biver ” and includes Bandall’s and Ward’s Islands. It necessarily follows that all of the water, as well as the islands between the Manhattan portion of the Eighth and the Queens portion, are pursuant to the word description contained in the Seventh Councilmanic District, and consequently the Eighth Councilmanic District is bisected by the Seventh Councilmanic District and is not on its face contiguous.
Moreover, the word descriptions of the district lines set forth in the statute of the. Eighth Councilmanic District run across the Seventh Councilmanic District at Ward’s Island. The map in evidence does not accurately portray said word descriptions of the Seventh and Eighth Councilmanic Districts as set forth in title ZB of chapter 51 of the Administrative Code, as there is a stated crisscrossing of the boundaries of these two districts at Ward’s Island.
The proof reveals that the Thirty-third Councilmanic District is constituted of sections of the eastern portion of Bichmond and a part of southwest Brooklyn. Plaintiffs contend that this combination also violates the standards of convenience, contiguity and compactness. However, it is to be noted- that the eastern - boundary of the Borough of Bichmond is defined as the Borough of Brookyln (Administrative Code of the City of New York, § 2-1.0, subd. 5), and therefore, by said definition, these two areas are contiguous and as compact as practicable.
These are the only three districts specifically challenged in the complaint of plaintiffs Calandra et al., although the complaint vaguely states that there are other areas of the city that have been invidiously gerrymandered in violation of their constitutional rights so as to. exclude members of the Bepublican Party and delete Bepublican voting strength. They urge adoption by this court of an alternate plan of reapportionment that would be predicated essentially upon an assembly district basis.
This argument and a similar alternative plan were effectively and properly disposed of by the United States District Court in Wells v. Rockefeller (311 F. Supp. 48, 52), wherein the court stated: “ Plaintiff’s approach of a fixed Bepublican-Democrat society ignores the all-important factors, amongst others, of the candidate’s personality, the public’s conception of his ability *843 and integrity and the current issues which he may espouse, or offer to. espouse, on behalf of his constituents. For this and other reasons we find no legal (certainly no constitutional) basis for accepting plaintiff’s speculations as to benefits, except to his own cause, to be derived from his own schematic approach.”
Moreover on this record, there is not a scintilla of evidence to Sustain the plaintiffs’ contention of a politically motivated invidious gerrymander violative of their constitutional rights. The plaintiff Badillo’s complaint enumerates in addition to the three Councilmanie Districts above discussed the 13th, 15th, 20th, 22nd, 23rd, 25th and 29th Councilmanie. Districts as being non-compact and noncontiguous. In the instant reapportionment, as in the plan considered in Matter of Schneider v. Rockefeller (31 N Y 2d 420, 430, supra): “ We would agree that some of the challenged districts are, to say the least, irregular in form, none are so aggravated or outrageous as -would warrant the conclusion that the Legislature has completely departed from the constitutional standard.”
Hindsight is such that perhaps it would have been possible to have done a neater job of creating 33 councilmanie districts of practical numerical equality, but lack of neatness does not render these districts noncompact, inconvenient or noncontiguous.
The question to be determined by this court, is not whether a better apportionment could have been accomplished, but rather whether the instant apportionment as reflected in title ZB conforms to the statute.
The challenge of the districts as to lack of racial and ethnic representation is without proof or merit.
‘1 Framers of voting districts are required to be color blind. Neither the concept of ‘ one person, one vote ’ nor the provisions of the Fourteenth or Fifteenth Amendments guarantee to Negroes or to any other racial or national group the right to concentrated voting power.” (Ince v. Rockefeller, 290 F. Supp 878, 884).
tx The concept of ‘ one person, one vote ’, we understand, neither connotes nor envisages representation according to color. Certainly it does not demand an alignment of districts to assure success at the polls of any race. No line may be drawn to prefer by race or color ’ ’. (Mann v. Davis, 245 F. Supp. 241 [E. D. Va.], affd. sub nom. Burnette v. Davis, 382 U. S. 42.) Title ZB contains a subdivision b which states that: ‘ ‘ If any numbered paragraph of subdivision a, of this section or any clause, sentence or part of any such numbered paragraph shall be adjudged by a court of competent jurisdiction to, be invalid, such judgment *844 shall not affect, impair or invalidate any other numbered paragraph of subdivision a of this section, but shall be confined in its operation to the numbered paragraph which was directly involved in the controversy or of which a clause, sentence, or part was directly involved in such controversy.”
The saving clause, above, however, is not absolute for the reason that it is. merely an aid to interpretation and not an inexorable command. It is to be given a reasonable interpretation and does not operate to save provisions which would not have been inserted except upon the supposition that the entire act was valid. The rule is that in order for a part of a statute to be upheld as separable, where another part is unconstitutional, they must not be mutually dependent oil one another is in no way altered by a legislative declaration that the invalidity of a portion of a statute shall not affect the remainder (Carter v. Carter Coal Co., 298 U. S. 238). In the instant case, each of the districts is dependent upon one another as one piece of a jigsaw puzzle fits into another, and thus does not prevail in light of the infirmities set forth herein.
From the foregoing, the court is constrained to conclude that title ZB of Local Law No. 4 (1973) “ Councilmanic Districts ” is invalid, and violative of the statutory requirements in that Councilmanic Districts numbered Second and Eighth are not “ of convenient and contiguous territory and is as compact a form as practicable ”.
Having reached this conclusion, there remains one question. Shall the forthcoming primary election for the candidates in the 33 councilmanic districts be enjoined?
In considering this problem, the court is cognizant of the fact that despite the infirmities of two of the planned council-manic districts as set forth in title ZB as to contiguity, convenience and compactness, the remaining 31 districts are in complete conformance with the law. Above all, each of the 33 newly created districts does conform to the mandate of ‘ ‘ one man, one vote ” as it pertains to equality of population. Certainly then, despite the reapportionment’s apparent failure, each of our citizens would have equal representation in our City Council on a population basis. This is substantially better than under the replaced council districts, where multitudes of our population were disenfranchised by the imbalance of population ratio in each of the districts. In addition, there is insufficient time to adequately prepare a new plan of reapportionment for this year’s municipal election. The last day for the filing of designating petitions for the June 4 primary was April 12, the date on which final briefs were submitted in this action.
*845 Bach of the plaintiffs in this action is a professional politician. Five are Republican county leaders and one is a member of Congress and a candidate for Mayor. As a consequence, each of them knew or should have known of the political calendar which necessitated that designating petitions be circulated and filed prior to April 12. Further, each of them knew or should have known that the six-week delay betweep the enactment of title ZB and the commencement of their respective actions had the potential of disrupting the electoral process and thus disenfranchising the entire citizenry of our city.
Our courts have held that an inordinate delay in bringing an action is sufficient grounds to warrant a refusal to grant an-injunction even where plaintiffs ’ arguments would warrant such relief on the merits. (See Matter of Kupferman v. Katz, 19 A D 2d 824, affd. 13 N Y 2d 932.) Such is the instant situation.
Already our lamp posts, billboards and streets are inundated with posters, placards, stickers and other political “ literature ”. Substantial moneys have been invested by the respective candidates for public office. While neither the expenditure of time, money, nor effort, no matter how extensive, should be controlling as to the validity of an election, in this case it would be grossly inequitable to the public at large to, at this juncture, enjoin the election and deprive them of their constitutional right to be represented in the city’s law-making process.
Our courts, despite constitutional infirmities in reapportionment plans, have permitted elections to be held in the following cases: Honig v. Board of Supervisors of Rensselaer County (24 N Y 2d 861, 862 [1969], affg. 31 A D 2d 989); Duquette v. Board of Supervisors of County of Franklin (32 A D 2d 706); Pokorny v. Board of Supervisors of Chenango (59 Misc 2d 929); see, also, Reynolds v. Sims (377 U. S. 533, 585-586); Kilgarlin v. Hill (386 U. S. 120, 121); Martin v. Bush (376 U. S. 222, 223).
In Abate v. Mundt (33 A D 2d 660, affd. 25 N Y 2d 309, affd. 403 U. S. 182), where the court sustained the reapportionment plan, the dissenting Judges, in each of the New York appellate courts, held that the election should not be enjoined.
In Honig v. Board of Supervisors (31 A D 2d 989), the Appellate Division stated: “We note, however, the imminence of the spring primary election, the first day for signing designating petitions being but three weeks away * * * and we consider, further, that, if employed as a temporary measure, the plan before us, having been adopted by the representative body, is preferable, generally and despite some measure of infirmity, to ' a plan to be fashioned by the court, as would otherwise be neces *846 sary in this case, by reason of the present time exigencies * * * We stress our holding that the plan is approved by this court as a temporary and interim measure, to govern the 1969 elections and to continue thereafter until validly superseded (see Matter of Orans, 17 N Y 2d 107, 110); and that the legislative authority must proceed as promptly as circumstances permit to formulate a plan more closely approaching equal representation.”
Accordingly, after trial, the court directs judgment in favor of the plaintiffs to the extent that it declares title ZB of Local Law No. 4 (1973) “ Councilmanic Districts ” invalid in that Councilmanic Districts numbered Second and Eighth fail to. conform to the statutory requirements of contiguity, convenience and compact as practicable.
The court further directs that title ZB of Local Law No. 4 (1973) be adopted as a temporary measure for the purpose of the June 4 primary election and the general election of November, 1973 and such plan of apportionment title ZB shall remain in full force and effect until the next councilmanic election or such earlier date after said general election as the Council may reapportion itself in accordance with the appropriate statute. That portion of the complaint which seeks an injunction against the Board of Elections from using the districts described in title ZB to prepare for the primary and general election of 1973. is denied and dismissed and the complaints in all other respects dismissed.