Fritz W. Alexander, J.
In this action for judgment declaring the invalidity of Local Law No. 23 of 1977 of the City of New York, as being in violation of the Municipal Home Rule Law of the State of New York, plaintiffs move for an injunction pendente lite and defendants cross-move for summary judgment dismissing the complaint. The motion for a temporary injunction is in all respects denied and the cross motion granted. The complaint, accordingly, is ordered dismissed.
Local Law No. 23 was adopted by the city council on or about March 31, 1977, approved by the Mayor on April 15, 1977 and filed with the city clerk on April 18, 1977. It amends the Administrative Code of the City of New York by adding to chapter 51 thereof a new title ZD, which divides the city into "thirty three councilmanic districts for the election of district council members”, and describes and establishes the boundaries thereof.
It appears that this local law was adopted upon the recommendation of the New York City Council Districting Commis *489 sion, established by the city council pursuant to the mandate of subdivision g of section 22 of the New York City Charter, added by the electorate at the general election of November 4, 1975.
Plaintiffs argue that Local Law No. 23 constitutes a "redistricting” of the city council and thus is barred by section 10 (subd 1, par a, cl [13], subcl [f]) of the Municipal Home Rule Law of the State of New York.
The referenced section provides, in pertinent part: "(f) Notwithstanding any inconsistent provisions of any general or special law, or any local law, ordinance, resolution or city or county charter heretofore or hereafter adopted, no local government may restructure its local legislative body (pursuant to provisons of this chapter or any other provision of law) more than once in each decade commencing with the year nineteen hundred seventy.” (Municpal Home Rule Law, § 10, subd 1, par a, cl [13], subcl [f].)
Plaintiffs point to the expansion and redistricting of the city council in 1973 and 1974,* done pursuant to the amendment of the City Charter under subdivision f of section 22, added by chapter 1206 of the Laws of 1971, as a "restructuring] of the local legislative body * * * once in [this] decade” and contend that a second restructuring within the decade 1970-1980 is forbidden. In support of this position, plaintiffs rely upon the literal language of the quoted statute and cite an opinion of the Corporation Counsel of the City of New York, issued in response to an inquiry from the chairman of the City Council Districting Commission, wherein W. Bernard Richland advises in opinion No. 108421/1977, that "the division of the city into new councilmanic districts cannot take place in accordance with Section 22g of the Charter absent enactment of appropriate legislation by the State Legislature superseding Sec. 10 (1) (a) (13) (f) of the Municipal Home Rule Law.”
Plaintiffs also rely on an informal opinion by the Attorney-General of the State of New York rendered to the County Attorney of Columbia County, advising that the "adoption of the use of computerized weighted voting on a county board of supervisors, without other change being made to the traditional method of selecting the representatives to the county board of supervisors constitutes a 'restructuring’ of the county *490 board of supervisors” so that another local law "enacted prior to the year 1980 [under which] the board of supervisors may be abolished and succeeded by a county legislature the members of which shall be elected from the towns and city wards on the same basis that town and city supervisors are elected” would be a second resturcturing of the local legislative body twice within the decade and thus, a forbidden action under section 10 (subd 1, par a, cl [13], subcl [f]) of the Municipal Home Rule Law.
Defendants argue that a distinction is required to be made between "restructuring” "reapportionment” and "redistricting”, based upon the definitions of those terms found in Websters New Collegiate Dictionary (1976). They contend that since Local Law No. 23 merely divides the council anew into districts; merely revises the legislative districts of the council, it does not purport to change the makeup, organization, or pattern of the council and therefore is not an action prohibited to be taken or done more than once in the decade 1970-1980 by the Municipal Home Rule Law.
Defendants argue further that the adoption by the electorate of New York City of subdivision g of section 22 of the City Charter "served as an implied repealer of the earlier enacted Municipal Home Rule Law provision”; and finally, that a grant of the relief requested by plaintiffs, to - wit: a declaration that pursuant to subdivision b of section 22 of the City Charter, members of the city council, in 1977, must be elected from the 27 State senatorial districts "lying wholly or partly within the City”, would constitute a violation of the United States Constitution, the cases interpretative thereof and the statutes enacted to implement the doctrines enunciated thereunder (see, e.g., Baker v Carr, 369 US 186; Beer v United States, 425 US 130; Voting Rights Act, US Code, tit 42, § 1973 et seq.).
The court agrees that the complaint should be dismissed, as a matter of law, but for reasons different from those advanced by defendants.
An examination of the legislative history out of which subdivision g of section 22 of the City Charter emerged and a comparison of that history with the manifested legislative intent underlying the enactment of section 10 (subd 1, par a, cl [13], subcl [f]) of the Municipal Home Rule Law, satisfies this court that the provisions of the two statutes are not in *491 conflict and that the cited section of the Municipal Home Rule Law has no application to the circumstances at bar.
As indicated above, Local Law No. 23 derives from the recommendation of the New York City Council Districting Commission, mandated to be established by the electorate in 1975 when they approved subdivision g of section 22 of the New York City Charter. This charter amendment, in turn, had been proposed to the electorate by the Temporary State Charter Commission, created by the Legislature initially in 1972 (L 1972, ch 634).
In creating the State Charter Revision Commission, the Legislature found that "(a.) structural reform of city government is necessary and desirable to (i) encourage genuine citizen participation in local city government, (ii) ensure that local city government is responsive to the needs of its citizens” and stated that the procedure established by this act "is in furtherance of the constitutional duty of the legislature to provide for the creation and organization of local governments in such manner as shall secure to them the rights, powers, privileges and immunities granted to them by the constitution.” (L 1972, ch 634, § 1.)
The commission was empowered and mandated, notwithstanding the provisions of any general, special or local law to "study the existing governmental structure of the city, draft such proposed new or revised city charter as may be required by the particular circumstances of such city and submit such new or revised city charter to the electors of the city” (L 1972, ch 634, § 3, subd b). "New or revised” city charter was defined to mean a "new or revised city charter or any amendment to the existing city charter which, if adopted, would change the structure or organization of city government.” (L 1972, ch 634, § 2; emphasis added.)
The grant of power and authority given to the Temporary State Charter Commission to recommend proposals that would "change the structure or organization of city government”, thus clearly included the power to propose a restructuring of the legislative body of the City of New York.
The legislation creating the Temporary State Charter Commission authorized the commission to submit such new or revised charter to the electors of the city at the general election of 1975 and provided that the charter could be submitted in "one or more parts”; "two or more parts * * * alternative charters, * * * amendments and * * * alternative *492 provisions to supersede designated portions of a proposed charter or amendment if adopted.” (L 1972, ch 634, § 3, subd d.) This amendment further provided that the proposal submitted by the commission would take effect as specified therein if it received "the affirmative vote of a majority of the qualified electors of the city voting thereon”. (L 1972, ch 634, § 3, subd e.)
At the general election held on November 4, 1975, a majority of the electors of New York City approved 6 of the 10 charter revision propositions proposed by the commission, including subdivision g of section 22, which mandated the establishment of "a city council districting commission to prepare a draft plan for dividing the city into councilmanic districts pursuant to this charter for the election of council members other than council members at large at the general election in the year nineteen hundred seventy-seven and thereafter”. The commission was directed to "conduct a public hearing on any proposed reapportionment plan prepared by it” and (to) "thereafter submit its proposed plan to the council, which [was required to] take final action on the plan by local law pursuant to this chapter.” (New York City Charter, chap 2, § 22, subd g; emphasis added.)
In 1969, the New York State Legislature enacted chapter 834 which amended sections 10 and 24 of the Municipal Home Rule Law and section 20 of the General Municipal Law. Section 10 was amended by adding to paragraph a of subdivision 1 thereof, a new clause 13 containing 6 subclauses (a through f). Section 24 was amended by adding to subdivision 2 a new paragraph j, containing two clauses and section 20 of the General Municipal Law was amended by adding a new subdivision 2 thereto.
The stated intent of the Legislature in enacting chapter 834 was "to insure (1) that the electorate of local governments shall have maximum freedom in selecting for themselves a legislative structure which complies with the requirements of law and at the same time meets the needs of each locality; (2) that the exercise of that freedom of choice shall not be encumbered by requirements that local governments use obsolete information or await costly new statistics; and (3) that meaningful and effective restructuring of local legislative bodies can be accomplished by utilizing referenda which preserve the right of the people to separate submission of the principle [sic] elements involved therein.” (L 1969, ch 834, § 1.)
*493 The Legislature intended that chapter 834 would extend alternative powers to those already possessed by local governments and declared that chapter 834 was not intended to, nor did it impose additional referenda or more restrictive requirements upon local legislative powers not then subject to referenda requirements.
Clause 13 specifically provides that "the power granted by this subparagraph shall be in addition to and not in substitution for any other power and the provisions of this subparagraph shall apply only to local governments which adopt a plan of apportionment thereunder(Emphasis added.)
As an integral part of the legislative scheme embodied in chapter 834, subdivision 2 of section 24 of the Municipal Home Rule Law was amended to add to the category of local laws subject to referendum on petition "a local law relating to apportionment adopted pursuant to subparagraph thirteen of paragraph a of subdivision one of section ten of this chapter”. The number of signatories upon such a referendum petition was reduced from 10% to 5% of the qualified voters, or 15,000 whichever is less; and the "legislative body of the local government [was empowered] on its own motion [to] adopt a resolution” requiring submission of an apportionment proposal or principal elements thereof to the electorate at a referendum.
It is pertinent to observe that the referendum on petition requirements of section 24 apply "[e]xcept as otherwise provided by or under authority of a state statute”. (Municipal Home Rule Law, § 24, subd 2.)
Clearly then, chapter 834 conferred upon a county, city, town or village the power to apportion its legislative body but required that any local law calling for such apportionment be made subject to referendum on petition pursuant to provisions of section 24 (subd 2, par j), "except as otherwise provided by or under authority of a state statute
Moreover, the powers granted to a county, city, town or village pursuant to section 10 (subd 1, par a) are therein stated to be "in addition to powers granted in the constitution, the statute of local governments or in any other law” (emphasis added).
It would follow therefore that any construction of section 10 (subd 1, par a, cl [13], subcl [f]) of the Municipal Home Rule Law that would preclude a local government from restructuring its local legislative body pursuant to State statutory *494 mandate would be inconsistent with the manifest intention of the Legislature and would conflict with the general rule of construction that generally recognizes "that a statute does not apply to the State, where its sovereign rights, prerogatives, or interests are involved, unless it is specifically mentioned therein or included by necessary implication” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 115). The Legislature has declared that the procedures established by chapter 634 of the Laws of 1972, which plaintiff argues are inconsistent with the provisions of chapter 834 of the Laws of 1969, are "in furtherance of the constitutional duty of the legislature to provide for the creation and organization of local governments in such manner as shall secure to them the rights, powers, privileges and immunities granted to them by the constitution”. (L 1972, ch 634, § 1, subd b.) This duty appertains unquestionably to the sovereign interests of the State and thus must be recognized and respected by the courts.
The court finds therefore that the enactment by the city council of Local Law No. 23 pursuant to the mandate of chapter 634 of the Laws of 1972 is not in violation of section 10 (subd 1, par a, cl [13], subcl [f]) of the Municipal Home Rule Law and indeed was accomplished through a power and procedure authorized by the Legislature to exist in addition to and not subject to the limitations of the powers conferred by chapter 834 of the Laws of 1969.
Indeed, it is clear that the restructuring of the city council accomplished pursuant to the mandate of chapter 1206 of the Laws of 1971 was done pursuant to a power expressly conferred by the Legislature, in addition to and not subject to the limitations of chapter 834 of the Laws of 1969. It is noted that this expansion and redistricting (apportionment, if you will) of the city council was done without regard to the referendum or petition requirements of section 24 (subd 2, par j) of the Municipal Home Rule Law although those requirements existed at the time Local Laws Nos. 4 and 53 of 1973 were enacted by the city council.
For the foregoing reasons, this court concludes that plaintiffs’ motion for an injunction pendente lite must be and hereby is denied. The cross motion of defendants for summary judgment dismissing the complaint is granted.

 The restructuring of the council in 1973 was ruled invalid (Badillo v Katz, 73 Misc 2d 836, mod and affd 41 AD2d 829, mod and affd 32 NY2d 825) and was redone under court order in 1974. Councilmanic districts were increased from 27 to 33.