John J. Dillon, J.
Once again the question of the reapportionment of the Westchester County Board of Supervisors is before the court. The history of this litigation is to be found in the three decisions of Mr. Justice Nolan, made on January 6, 1966 (49 Misc 2d 116), July 6,1966 (51 Misc 2d 168), and Febru *1032 ary 3,1967 (53 Misc 2d 88), in each of which a plan of reapportionment proposed by the board was held to be unconstitutional; and in the decision of this court dated August 23, 1967, in which a fourth plan was held to be in accordance with the 11 one person-one vote ” standard laid down in Reynolds v. Sims (377 U. S. 533) and similar cases. A judgment to that effect was entered in this action on August 30, 1967. The plan, thus approved by the court from a constitutional standpoint, was overwhelmingly defeated by popular vote on November 7,1967.
Since the second decision of Mr. Justice Nolan on July 6, 1966, the Board of Supervisors has been operating, in accordance with the court’s direction, under a temporary system of weighted voting. It is still so operating today. The present motion is made by those plaintiffs who represent the League of Women Voters. The court is asked to vacate the judgment of August 30, 1967, and thereupon (1) to order a reapportionment on the basis of single-member districts; or (2) to fix a time limitation within which a valid plan shall be proposed by the Board of Supervisors, in default of which the court shall undertake the task.
At the outset there is a procedural problem. The court is asked to begin by vacating the judgment of August 30, 1967. It is argued in effect that the defeat of the last proposal at the polls amounts to a reversal of the court’s determination. This proposition is fallacious. All the court determined was that the plan was constitutional. A judgment declaring legislation constitutional may be reversed by another court of appropriate appellate jurisdiction. It may be nullified by constitutional amendment, or by a contrary determination by a court of controlling authority in some other case involving the same question. But it cannot be reversed by popular vote. The fallacy of the moving parties is in failing to distinguish between the totally different functions of the court and the electorate. The court can only determine whether the legislation is valid. The voters (in the case of legislation subject to popular referendum) can only determine whether it is acceptable. The distinction was expressly pointed out in this court’s decision of August 23,1967. The People have refused to accept the plan put before them in the 1967 referendum, but their vote could not make the plan unconstitutional.
Of course, the moving parties are entitled to relief, and relief should be obtainable without resort to vacating the former judgment. If, as the moving plaintiffs insist, the court has inherent power to vacate its own judgment, it must have the power in these unusual circumstances to modify the judgment so as to authorize the present application and any further applications *1033 which may be necessary until a valid reapportionment plan has been finally adopted. This part of the motion is therefore granted to the extent of amending the judgment of August 30, 1967, by authorizing any party to apply at the foot of the judgment for further relief.
Of the two alternative forms of relief demanded in the order to show cause, the second is clearly to be preferred. It would be inappropirate, and at this stage a usurpation of the legislative function, for the court to hold that the board must be apportioned on the basis of single-member districts. A bulletin issued by the Executive Department of the State of New York (Office for Local Government) on November 30, 1967, indicates that four other apportionment plans are in effect in various counties of the State. The selection of an appropriate plan for Westchester County, and the implementation of the plan in detail, worked out within the confines of the Federal and State Constitutions, should be the function of the Board of Supervisors, subject of course to judicial review in respect to its constitutionality, and subject further to popular referendum in respect to its acceptability. Obviously the board should proceed with the results of the last election in mind. The submission of a plan substantially similar to the last one, so overwhelmingly rejected by the People, without providing any alternative method of reapportionment, would have to be regarded by the court as a failure to act. With this word of caution, and with the time limitation hereinafter specified, the court remits the matter again to the Board of Supervisors for appropriate action. The court fixes April 15, 1968, as the final date for the enactment by the board of the necessary local law.