David T. Gibbons, J.
The petitioners, by order to show cause, seek an order "pursuant to Article 78 of the CPLR mandating the Board of Supervisors to redistrict the County of Nassau to construct a district composed of Hempstead, Roosevelt, Freeport, Lakeview and Uniondale covering all census tracts that are comprised of a minority population of Black and Spanish speaking residents.” The court has disposed of the procedural elements and will concern itself with the merits of the petition. Testimony was presented by Eugene S. Rapelyea, petitioner, in amplification of his petition.
The petition appears to direct itself against the two proposed apportionment maps contained in Plan A and Plan B of the Local Laws of 1975, No. 3, of the County of Nassau, which was adopted by the Nassau County Board of Supervisors on April 9, 1975, as a proposed apportionment of Nassau County into 15 legislative districts of equal or near equal population equality from which a single legislator is to be elected from each district. Petitioner, on argument of the motion, subscribed to the map proposed by the defendants, adding thereto a portion of Freeport as delineated in petitioner’s Exhibit No. 1 in evidence, with respect to District 3.
The constitutionality of Local Law No. 3 is the subject matter of a proceeding in this court entitled Franklin v Krause (81 Misc 2d 52) which is also being considered by the court at this time.
It is the established law that the establishment of a plan of reapportionment is purely a legislative function which in this *60 case is to be carried out by the Board of Supervisors of Nassau County. (Schneider v Rockefeller, 31 NY2d 420; Reynolds v Sims, 377 US 533; Burns v Richardson, 384 US 73; Ely v Klahr, 403 US 108, 114.)
The court will intervene by redrawing the districts only in the case where there is no constitutionally valid plan in existence and where there is either persistent failure, refusal, or undue delay by the legislative body to come forth with a valid plan of reapportionment. (Matter of Orans v Rockefeller, 47 Misc 2d 493; Town of Greenburgh v Board of Supervisors of Westchester County, 55 Misc 2d 1031.)
If evidence is produced before the court to support a factual finding that the districts were so physically contrived as to invidiously cancel out or minimize the voting strength of specific ethnic or racial groups, such mode of apportionment will be stricken down. (White v Regester, 412 US 755, 766.)
Here, the petitioners, absent any factual showing that the voting power of any minority group has been diluted in violation of the one man, one vote doctrine in any of the existing legislative districts as set up in Plan A or Plan B, seek to have the court carve out an enclave in such manner as would diminish the voting power of those persons residing therein who may be of a different ethnic or racial background than the petitioners.
This concept is divisive and does violence to a free and democratic form of government, and if permitted to take place, would result in a collection of separate ghettos for each group of different ethnic racial or religious backgrounds. In Ince v Rockefeller (290 F Supp 878, 884), the court stated: "Framers of voting districts are required to be color blind. Neither the concept of 'one person, one vote’ nor the provisions of the Fourteenth or Fifteenth Amendments guarantee to Negroes or to any other racial or national group the right to concentrated voting power.”
In Mann v Davis (245 F Supp 241, 245 [ED Va], affd sub nom Burnette v Davis, 382 US 42), the court held: "The concept of 'one person, one vote’, we understand, neither connotes nor envisages representation according to color. Certainly it does not demand an alignment of districts to assure success at the polls of any race. No line may be drawn to prefer by race or color.”
The cases cited in the petition provide no legal support for the position the petitioners advance here. Those cases are *61 authority for the principle pointed out above, that where the rights of a minority group are diluted or minimized by the alignment of districts or the establishment of multilegislator districts to achieve such an end, the court will strike down such effort as one in violation of the equal protection clause of the Constitution.
There is no constitutional obligation cast upon a municipality or other governmental unit to create a legislative district for the accommodation of any ethnic, racial, political or religious group that may reside therein to insure their greater voting power; on the contrary, the law is most diligent to apply the appropriate constitutional safeguards to strike down any such contrivance when it is shown to be established that it was inspired by an effort to dilute or diminish the voting power of any minority groups in such district.
The court is mindful of and sympathetic with the problems and deprived conditions confronting the minority groups; nevertheless, the court must follow the law, and there are no cases which would authorize the court to set up legislative districts on an ethnic basis.
This court, by its decision in writing dated May 7, 1975, has determined that Plan B of Local Law No. 3, was enacted pursuant to the standards consistent with the equal protection clauses of the State and Federal Constitutions and that the same may be submitted to a public referendum to the people of Nassau County on June 10, 1975.
Inasmuch as a constitutional plan has been presented by the board of supervisors, this court cannot change the map contained in Plan B of Local Law No, 3.
The petition, as amplified by the testimony of Eugene S. Rapelyea herein, contains only conclusory allegations and it pleads no fact which would impel the court to apply the principles of law discussed above in favor of petitioners.
The motion to dismiss the petition for legal insufficiency is granted.